HELEN STARKWEATHER *v.* DEVBALA PATEL

HELEN STARKWEATHER *v.* MANCHESTER
MEMORIAL HOSPITAL CORPORATION
(12357)

DUPONT, C. J., LANDAU and HEIMAN, Js.

Argued February 24—decision released May 17, 1994

*Steven B. Kaplan,* for the appellant (plaintiff).

*Robert E. Kiley,* with whom were *Lois B. Tanzer* and, on the brief, *Donna H. Ryan,* law student intern, for the appellees (defendants).

HEIMAN, J. In this action seeking damages for alleged medical malpractice, the plaintiff appeals from the judgment of the trial court granting the defendants' motions for summary judgment. The trial court rejected the plaintiff's claim that the care afforded to her by the defendant[1] Devbala Patel, a pathologist, was a continuous course of treatment commencing in November, 1985, and not terminating until August 15, 1989. The defendants assert that there was no ongoing relationship between the plaintiff and Patel, and that the statute of limitations had expired at the time that suit was commenced.

The following facts are necessary for a proper resolution of this appeal. In November, 1985, the plaintiff sought treatment from a dermatologist for a small pigmented lesion on her left thigh. The dermatologist performed a biopsy and instructed the plaintiff to take the sample of tissue to the pathology laboratory located at the defendant Manchester Memorial Hospital. As instructed, the plaintiff took the tissue sample to the laboratory for a determination as to whether the lesion was benign or malignant. The plaintiff paid a fee for the services of the pathology department.

Patel is a physician licensed to practice medicine in Connecticut, and is a board certified anatomical pathologist,[2] who, at all times relevant to this case, was an employee of the defendant hospital. Patel examined the

[1] The defendants in this action are Devbala Patel, a pathologist, and Manchester Memorial Hospital Corporation. The original actions were brought against each defendant separately and were subsequently consolidated.

[2] An anatomical pathologist is a physician who examines and diagnoses tissue specimens.

tissue removed from the plaintiff's thigh on or about November 11, 1985, and issued a signed pathology report that concluded that the sample tested constituted a "compound nevus."[3] The report thus indicated that the lesion was benign.

Relying on the conclusion by the pathologist that the lesion was benign, the plaintiff sought no further treatment. The dermatologist suggested no further action because he had confidence in Patel. The plaintiff returned to the dermatologist in July, 1988, for a routine checkup. At that time, she requested that the dermatologist examine the lesion on her thigh. Again, because of the 1985 pathology report, the dermatologist reassured the plaintiff that the lesion was a benign mole and recommended no additional treatment.

In July, 1989, the plaintiff visited the dermatologist and insisted that the lesion on her left thigh again be examined. The dermatologist again advised the plaintiff that, on the basis of the pathology report, no medical or surgical intervention was required. The mole, however, was removed for what the plaintiff understood were cosmetic reasons and sent to California for preparation of a tissue slide. When the slide was returned to the dermatologist, it was submitted to Patel for diagnosis.

On August 1, 1989, Patel concluded from her examination of the tissue sample removed from the plaintiff's thigh, that the mole was a "malignant melanoma." The pathology report prepared by Patel also indicated that upon subsequent review, the 1985 biopsy of the mole revealed the presence of "an atypical melanocytic hyperplasia," rather than a compound nevus, as originally reported, a significantly different diagnosis than

---

[3] A compound nevus is a "common mole."

that originally made by Patel. This diagnosis was reported to the plaintiff's treating physician who informed the plaintiff.

Subsequent to the 1989 biopsy, the plaintiff underwent several surgical procedures for the removal of the cancerous growth. The second surgery required widening of the margins of tissue removed surrounding the melanoma. The lesion was much deeper and wider than in 1985. Additionally, the plaintiff was required to undergo removal of the lymph nodes in her groin and inguinal region as a prophylaxis against metastasis and recurrence of the melanoma.

The plaintiff commenced this action against Patel by writ, summons and complaint dated July 6, 1990, and served on her on July 12, 1990. The plaintiff commenced her action against the defendant hospital by writ, summons and complaint dated July 18, 1990, and served on the defendant hospital on the same date.

In her complaint, the plaintiff claimed an ongoing physician-patient relationship, as well as a continuing course of conduct.[4] Both defendants filed special defenses alleging that the causes of action asserted by the plaintiff were barred by the expiration of the statute of limitations, General Statutes § 52-584.[5]

---

[4] The claim made against the defendant hospital in the first count implicates the hospital's liability under the doctrine of respondeat superior. In the second count against the hospital, the plaintiff alleges a breach of an implied agreement and warranty that the hospital's agents or employees, including Patel, would act in accordance with the requisite standard of care. Thus, no separate acts of corporate negligence are alleged against the hospital.

[5] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanitorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three

The defendants both filed motions for summary judgment, each of which was granted by the trial court. In her affidavit in support of the motion for summary judgment, the defendant Patel attempted to negate the claim of the plaintiff that a physician-patient relationship ever existed. The trial court, although stating that the first issue to be resolved was whether a physician-patient relationship existed between the defendant Patel and the plaintiff, failed to determine whether that fact was in issue. The trial court also stated that if such a relationship was not in issue, a second determination of whether it was an ongoing relationship until 1989 must be made. Instead, without resolving the first issue, the trial court found, as a matter of law, that no ongoing relationship existed that would toll the statute of limitations. In short, the trial court found that the issue of an ongoing relationship was not a matter of fact in this case, but was a matter of law, without having first determined that no factual issue existed as to the nature of the relationship among the parties. This appeal followed, and we reverse the judgment of the trial court.

Although the plaintiff appears to raise a number of separate issues on appeal,[6] except as noted the issues all appear to be variations on the theme that the trial court improperly granted summary judgment by impos-

years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[6] The plaintiff sets forth the following issues in her brief:

"1. Whether the trial court erred in its application of General Statutes § 52-584?

"2. Whether the trial court erred by failing to find that the statute of limitations in General Statutes § 52-584 was tolled by a continuing course of conduct and/or an ongoing physician-patient relationship?

"3. Whether the trial court erred in applying the statute of limitations in General Statutes § 52-584 to this case in derogation of plaintiff's rights under article first, § 10 of the Connecticut constitution?

"4. Whether the trial court erred in applying the statute of limitations in General Statutes § 52-584 to this case in derogation of plaintiff's rights

ing a factual finding as a matter of law. We point out, however, that the trial court failed to recognize the existence of the threshold question of disputed fact, whether any physician-patient relationship existed, an issue that must be factually resolved before the trial court can reach the question of the nature of the duty incurred by Patel because of that relationship or the existence of an ongoing relationship.

We begin our analysis by once again stating the standard by which we review the decision of the trial court in granting a motion for summary judgment. Practice Book § 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Suarez* v. *Dickmont Plastics Corp.,* 229 Conn. 99, 105, 639 A.2d 507 (1994); *Dolnack* v. *Metro-North Commuter Railroad Co.,* 33 Conn. App. 832, 834–35, 639 A.2d 530 (1994); *Gabrielle* v. *Hospital of St. Raphael,* 33 Conn. App. 378, 382–83, 635 A.2d 1232, cert. denied, 228 Conn. 928, 640 A.2d 115 (1994). Even though the burden of showing the nonexistence of any material fact is on the party that seeks summary judgment, "the party opposing [summary judgment] must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." *Suarez* v. *Dick-*

---

under article first, § 20 of the Connecticut constitution and Section One, Amendment XIV, of the United States Constitution?

"5. Whether the trial court erred in failing to find that the six year statute of limitations set forth in General Statutes § 52-576 precluded the entry of summary judgment?"

We also note that at oral argument counsel for the plaintiff conceded that the third and fourth issues were not raised before the trial court. Although not asserted in the brief, at oral argument the plaintiff claimed that these two claims were reviewable under the rubric of *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). In light of our resolution of the claim that the trial court improperly granted summary judgment, we do not reach the issue of the reviewability of these claims.

*mont Plastics Corp.,* supra, 105; *Danziger* v. *Shaknaitis,* 33 Conn. App. 6, 9, 632 A.2d 1130 (1993), cert. granted on other grounds, 228 Conn. 914, 635 A.2d 846 (1994); see also *Gabrielle* v. *Hospital of St. Raphael,* supra, 383. When called on to decide a motion for summary judgment, the trial court is required to construe the evidence in the light most favorable to the nonmoving party. *Suarez* v. *Dickmont Plastics Corp.,* supra, 105; *Gabrielle* v. *Hospital of St. Raphael,* supra, 383. The test to be applied by the trial court is whether, on the same facts, a party would be entitled to a directed verdict. *Suarez* v. *Dickmont Plastics Corp.,* supra, 105–106; *Gabrielle* v. *Hospital of St. Raphael,* supra, 383; *Cortes* v. *Cotton,* 31 Conn. App. 569, 573, 626 A.2d 1306 (1993).

"[I]n order [t]o support a finding of a continuous course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) *Blanchette* v. *Barrett,* 229 Conn. 256, 275, 640 A.2d 74 (1994); see *Cross* v. *Huttenlocher,* 185 Conn. 390, 400, 440 A.2d 952 (1981). The continuous course of conduct doctrine requires that three requirements be met: (1) an ongoing physician-patient relationship; (2) negligence by the defendant; and (3) some form of conduct that continued beyond the initial treatment. *Blanchette* v. *Barrett,* supra, 278. These requirements are "conspicuously fact-bound." Id., 276. "The determination of

whether the physician-patient relationship has terminated depends upon several factors. These factors include the subjective views of the parties as to whether their relationship had terminated; the length of their relationship; the frequency of their interactions; the nature of the physician's practice; whether the physician had prescribed a course of treatment for or was monitoring the condition of the patient; *whether the patient was relying upon the opinion and advice of the physician with regard to a particular injury, illness or medical condition;* and whether the patient had begun to consult with another physician concerning the same injury, illness or medical condition." (Emphasis added.) Id., 278. Therefore, there exists an issue of material fact as to whether the relationship between the plaintiff and Patel was a physician-patient relationship and whether such relationship was ongoing. Thus, the trial court improperly granted summary judgment.

The judgments are reversed and the case is remanded with direction to deny the motions for summary judgment and for further proceedings.

In this opinion the other judges concurred.