## SUZANNE SANBORN *v.* CHARLES C. GREENWALD (13372)

Dupont, C. J., and Lavery and Hennessy, Js.

Argued April 25—decision released September 12, 1995

*Gerald S. Sack,* with whom was *Michael B. Pollack,* for the appellant (plaintiff).

*Robyn L. Sondak,* for the appellee (defendant).

DUPONT, C. J. The plaintiff appeals from the judgment that followed the granting of the defendant's motion for summary judgment by the trial court, *Hammer, J.,* in this action for legal malpractice. On appeal, the plaintiff claims that the trial court improperly held that General Statutes § 52-577 (1) was not tolled by an alleged continuing course of conduct on the part of the defendant and (2) was constitutional as applied to her.[1] We affirm the judgment of the trial court.

Certain background facts are relevant to the issues in this case. In 1982, the plaintiff divorced her husband. The dissolution judgment required, inter alia, that the plaintiff's husband pay support and alimony, convey his interest in the marital home to the plaintiff, and continue to pay the second mortgage on the marital home. The plaintiff was to fund a trust in the amount of $25,000 for the benefit of their minor child upon the happening of certain stated contingencies, such as her cohabitation or remarriage, or the sale of the family residence.

Both parties in the present case filed affidavits, the defendant to show that he was entitled to summary

---

[1] The defendant claims in his brief that we should not entertain this appeal because the record is inadequate without those portions of the transcript referenced in the trial court's postcard decisions concerning the motion for summary judgment and the motion to vacate and reargue. This issue is now moot, however, because the plaintiff's motion to amend the transcript was granted, and this court has the relevant portions of the transcript. Further, the trial court has replaced the postcard decisions with full memoranda of decision on the issues in this appeal.

judgment, and the plaintiff to show that the defendant was not. The affidavits provided the following additional facts, which are not disputed by either party. In 1984, the plaintiff retained the defendant as her attorney to pursue contempt proceedings against her former husband on the ground that he had failed to comply with the orders of the dissolution judgment. After the trial court ruled favorably on the plaintiff's motion, the parties began negotiations to modify the terms of the judgment. The defendant advised the plaintiff that it would be in her best interest to assume the second mortgage on the marital home, to accept less money for support payments, and to forgive any arrearages in support and alimony payments, in exchange for the deletion of her obligation to fund the trust. The defendant drafted a proposed stipulation to modify the dissolution judgment in accordance with his advice and the plaintiff signed the stipulation in reliance on the defendant's representation that she would no longer be obligated to fund the trust.

In September, 1985, after the stipulation was approved by the court, the defendant mailed a copy to the plaintiff, as well as a copy of the recorded quitclaim deed of her former husband's interest in the marital home. The cover letter instructed the plaintiff to contact him if she had any questions regarding the documents. The defendant's affidavit claims that his representation of the plaintiff ended at this time.

In 1989, the plaintiff's former husband threatened to file a motion for contempt against the plaintiff for her failure to fund the trust. The plaintiff retained a new attorney, who then spoke to the defendant about the plaintiff's legal obligations under the stipulation. The defendant advised the plaintiff's attorney that pursuant to the stipulated modification of the judgment, the plaintiff was not required to fund the trust. On two other occasions, both in 1990, the defendant represented to

the plaintiff's attorney that the plaintiff was not required to fund the trust under the terms of the stipulation he had drafted.

The plaintiff's former husband initiated contempt proceedings against the plaintiff, and on August 3, 1990, the plaintiff was ordered to fund the trust and to pay her husband's attorney's fees of $1060. The plaintiff filed a transcript of those proceedings, along with her affidavit in this action. The transcript indicates that despite the defendant's attempt, he was not allowed to testify that the intent of the stipulation was to absolve the plaintiff of her obligation to fund the trust. The trial court, *Jackaway, J.*, which ordered the trust to be funded, commented that the stipulation was poorly drafted but that it was not ambiguous, and that, therefore, any testimony as to intent was irrelevant. The court further stated that there was no provision at all in the stipulation relating to the funding of the trust. The plaintiff's affidavit provides that on June 25, 1990, the date of the contempt hearing, the defendant not only attempted to testify in her behalf but also advised her that she did not need to fund the trust.

The plaintiff commenced this action against the defendant on July 9, 1992. The plaintiff claims that the defendant negligently drafted the modification and negligently failed to warn and advise her of the legal consequences of the modification, which failure to warn and advise continued until August 3, 1990, the date the court ordered her to fund the trust. The defendant, by way of special defenses, alleged that General Statutes §§ 52-581, 52-576 and 52-577 barred the plaintiff's recovery because his representation of her ceased on August 20, 1984.[2] The defendant moved for summary judgment

---

[2] Section 52-581 relates to actions on oral contracts and § 52-576 relates to actions on implied contracts. The plaintiff's complaint is grounded solely in negligence and has no allegations relating to contract.

arguing that the plaintiff's claim was time barred by the statute of limitations. The court granted the motion on the basis that there was no genuine issue of material fact in dispute and the defendant was entitled to judgment as a matter of law because her action was barred by § 52-577, the general tort statute of limitations.

The plaintiff later filed a motion to vacate and reargue the summary judgment motion, claiming that § 52-577, as interpreted and applied by the court, was unconstitutional as violative of article first, § 10, of the Connecticut constitution. The court granted the motion to reargue but denied the plaintiff's claim that the statute of limitations was unconstitutional.

"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Even though the burden of showing the nonexistence of any material fact is on the party that seeks summary judgment, the party opposing [summary judgment] must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . When called on to decide a motion for summary judgment, the trial court is required to construe the evidence in the light most favorable to the nonmoving party. . . . The test to be applied by the trial court is whether, on the same facts, a party would be entitled to a directed verdict." (Citations omitted; internal quotation marks omitted.) *Starkweather* v. *Patel*, 34 Conn. App. 395, 400–401, 641 A.2d 809, cert. denied, 230 Conn. 905, 644 A.2d 918 (1994). Summary judgment is appropriate where the action is barred by the statute of limitations. *Shuster* v. *Buckley*, 5 Conn. App. 473, 477, 500 A.2d 240 (1985).

While this action would ordinarily be barred by the statute of limitations because it was brought approxi-

mately seven years after the date of the alleged negligent drafting of the stipulation, the plaintiff asserts that the representations made by the defendant in 1989 and 1990 to her, her attorney, and the trial court, constitute a continuing course of conduct that tolls the statute of limitations.

Neither at oral argument on the defendant's motion for summary judgment nor in her brief did the plaintiff claim that she was seeking damages for any negligent representation in the drafting of the modification of the original dissolution judgment.[3] She did claim, however, that she was seeking damages for the defendant's negligent advice and negligent failure to warn during 1989 and 1990. While the defendant did not claim that the defendant represented her after 1985, her claim is that the defendant had a duty to warn and to advise correctly that extended beyond the time of his representation of her. She argues that the duty exists because of the defendant's later wrongful conduct in dispensing bad advice, consisting of an erroneous interpretation of the stipulation, which related to his prior act of negligent draftsmanship. The plaintiff thus raises the question of whether the statute of limitations was tolled by the continuing course of conduct doctrine as explicated in cases such as *Blanchette* v. *Barrett*, 229 Conn. 256, 640 A.2d 74 (1994), and *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 541 A.2d 472 (1988).[4]

---

[3] In effect, the plaintiff abandoned her allegation of negligence in the drafting of the stipulation as alleged in paragraph fourteen of her complaint.

[4] *Starkweather* v. *Patel*, supra, 34 Conn. App. 395, is not applicable. In *Starkweather*, we reversed the trial court's granting of a motion for summary judgment because there was a question of fact as to whether there was an ongoing physician-patient relationship between the plaintiff and the defendant. Id., 402. In other words, a question still existed as to whether the defendant had a duty to the plaintiff, arising out of a physician-patient relationship, that remained in existence after the commission of the original wrong. Here, the plaintiff does not claim a lawyer-client relationship, and specifically argues that there was none after 1985.

"When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." *Handler* v. *Remington Arms Co.*, 144 Conn. 316, 321, 130 A.2d 793 (1957). "[I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) *Blanchette* v. *Barrett*, supra, 229 Conn. 275. The continuing course of conduct doctrine is "conspicuously fact-bound." Id., 276.

The plaintiff's amended complaint, on which she relies for her cause of action, claims that the defendant "negligently failed to warn and advise the plaintiff concerning the legal consequences of the modification he prepared . . . ." The plaintiff argues that the representations made by the defendant in 1989 and 1990, concerning the effects of the stipulation are wrongful acts connected with the "prior bad act" of the drafting of the stipulation, and that this evidence is sufficient to toll the statute of limitations under the continuing course of conduct doctrine. We disagree.

"The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Id. For example, the doctrine is generally applicable under circumstances where "[i]t may be

impossible to pinpoint the exact date of a particular negligent act or omission that caused injury" or where the negligence consists of a series of acts or omissions and it is "appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to run . . . ." Id., 277.

The application of the continuing course of conduct doctrine necessitates an examination of the cases in which the statute of limitations was tolled on the basis of that doctrine. In *Blanchette* v. *Barrett*, supra, 229 Conn. 256, the statute of limitations was tolled because of evidence that the defendant physician had failed to satisfy his duty of monitoring the plaintiff's questionable breast condition. The court considered this to be later wrongful conduct that related to the defendant's diagnosis of the plaintiff. Id., 275. In *Cross* v. *Huttenlocher*, 185 Conn. 390, 440 A.2d 952 (1981), the statute of limitations was tolled because of the negligent failure of a physician to warn a patient of the harmful side effects of a drug that the physician had prescribed and that the patient had continued to ingest over a period of time. In *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 429 A.2d 486 (1980), the statute of limitations was tolled because the installer of a pilot light gave repeated instructions as to its use in response to multiple complaints by the plaintiff. In *Handler* v. *Remington Arms Co.*, supra, 144 Conn. 316, the statute of limitations was tolled by the defendant manufacturer's continuing failure to warn of the potential danger associated with an inherently dangerous cartridge of ammunition. In each of these cases, the plaintiff's injury was perpetuated, enhanced and even caused by the breach of a duty on the part of the defendant.

The plaintiff relies on the language of *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 210, that a duty may continue to exist after the cessation of the act relied on if there is evidence of either a special relationship

between the parties giving rise to a continuing duty or some later wrongful conduct of a defendant related to the prior act. The defendant here did not engage in any affirmative conduct initiated by him after 1985, made no promise after the initial drafting of the stipulation that he would do something else in the future, had no fiduciary or contractual relationship with the plaintiff in 1989 or 1990, and committed no fraud. The absence of any such facts in *Fichera* led to the conclusion that the statute of limitations was not tolled. A plaintiff should not be allowed to keep a legal malpractice action alive after the lawyer-client relationship has ended by telephoning the attorney every three years to obtain verification that something the attorney had drafted previously would not cause the plaintiff harm.

The defendant here had no continuing duty to notify the plaintiff of the alleged mistake in the stipulation in the absence of proof that he subsequently learned that his drafting was negligent. See *Blanchette* v. *Barrett*, supra, 229 Conn. 284; see also *Nardi* v. *AA Electronic Security Engineering, Inc.*, 32 Conn. App. 205, 213, 628 A.2d 991 (1993). Without a duty, there can be no breach of duty. The defendant's professional representation had ended and the statements that the defendant made to the plaintiff's new attorney neither created nor perpetuated any duty to the plaintiff. Further, the defendant was not capable of remedying any problems with the stipulation once it had been approved by the trial court in 1985.

There is no tolling of statutes of limitations in either tort or contract actions for the failure of an attorney to tell a client that a document drafted by the attorney could be inaccurate because, once the representation of the client is complete and the document executed, any warning would be ineffective. See *Robbins* v. *McGuinness*, 178 Conn. 258, 262, 423 A.2d 897 (1979). The doctrine of continuing course of conduct as used to toll a statute of

limitations is better suited to claims where the situation keeps evolving after the act complained of is complete, such as medical malpractice, rather than one where the situation cannot change, such as legal malpractice arising from negligent drafting of the written word.

The trial court found that there were no facts from which to conclude that the defendant had any continuing duty beyond the time his representation of the plaintiff ended. There is no contest here relating to the resolution of a material fact but, rather, a contest over the legal significance of the facts. The trial court was correct. There are no allegations of facts in the complaint to support a continuing duty of the defendant. *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 13, 459 A.2d 115 (1983). Because there is no material fact in issue we must now determine whether the defendant is entitled to judgment as a matter of law. If § 52-577 is constitutional, we must uphold the summary judgment rendered for the defendant; if § 52-577 is unconstitutional, we must set the judgment aside.

The plaintiff argues that § 52-577[5] is unconstitutional under article first, § 10, of the Connecticut constitution, which provides that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." The plaintiff claims that § 52-577 violates the constitution by restricting the common law right of action for legal malpractice based on negligence without providing her with a reasonable statutory alternative to the enforcement of that right. Her claim is to be tested by the effect of the statute on her under the facts of this case and not under some other circum-

---

[5] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

stances. *Pierce* v. *Albanese,* 144 Conn. 241, 251, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957).

"We recognize that a party challenging the constitutionality of a statute must prove its unconstitutionality beyond a reasonable doubt. . . . While the courts may declare a statute to be unconstitutional, our power to do this should be exercised with caution, and in no doubtful case. . . . Every presumption is to be given in favor of the constitutionality of the statute." (Citations omitted; internal quotation marks omitted.) *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey,* 229 Conn. 312, 316, 640 A.2d 101 (1994); see *Sassone* v. *Lepore,* 226 Conn. 773, 778–79, 629 A.2d 357 (1993).

"Article first, § 10, has been viewed as a limitation upon the legislature's ability to abolish common law and statutory rights that existed in 1818, when article first, § 10, was adopted, and which were incorporated in that provision by virtue of being established by law as rights the breach of which precipitates a recognized injury . . . . Therefore, where a right existed at common law or by statute in 1818 and became incorporated into the Connecticut constitution by the adoption of article first, § 10, the legislature may restrict or abolish such incorporated right only where it provides a reasonable alternative to the enforcement of such right." (Citations omitted; internal quotation marks omitted.) *Ecker* v. *West Hartford,* 205 Conn. 219, 234, 530 A.2d 1056 (1987).

The right at issue in this case is the ability to sue in tort for legal malpractice. This right did exist at the time our constitution was adopted and can be traced back to the English common law action of trespass on the case. As Zephaniah Swift stated in 1796, "[a]ttornies in consequence of any neglect, mismanagement or corruption, by which the client suffers any loss, either in

his suit or otherwise, shall be liable to pay all damages to the party injured." 2 Z. Swift, A System of the Laws of the State of Connecticut (1796), p. 114; see also *Huntington* v. *Rumnill*, 3 Day (Conn.) 390, 396 (1809).

At the time our constitution was adopted in 1818, however, there was no statute of limitations that restricted this type of action, although there were statutes of limitation restricting other causes of action. In May, 1819, a committee was appointed "to examine the statute laws, and to recommend such alterations and provisions as should be necessary and expedient to render the statutes conformable to the constitution." Preface, Connecticut General Statutes (1821) p. viii. In 1821, the committee reported to the legislature in accordance with their mandate. A bill repealing certain statutes and enacting others was passed pursuant to their report. One of the statutes enacted was § 4 of title 59, entitled "Limitations. An Act for the Limitation of Civil Actions, and of Criminal Prosecutions," which provided: "No action of trespass on the case shall be brought but within six years next after the right of action shall accrue." The commentary to title 59 provides: "(2) Statutes of limitation are properly called statutes of repose; as they prevent disputes of long standing, which are highly prejudicial to the interests of the community. Though statutes of this kind have been enacted from time to time, yet there were many cases to which they did not extend. By the former statutes, there was no limitation to action of account, assumpsit on written or implied contracts, or trespass on case, except for slander. The present statute is intended to limit all actions, to a reasonable time. In the former statutes, the limitation was confined to bonds, bills or notes, for money only; and where the condition or contract was for any other thing, there was no limitation. As there can be no reason for such a distinction, it is here omitted." The statutes of limitation for the commencement

of actions of trespass on the case has been recognized as existing in 1821. *Miner* v. *McNamara,* 82 Conn. 578, 580, 74 A. 933 (1909).

We look "to the available . . . law in reasonable temporal proximity to the adoption of the constitution of 1818 to enhance our understanding of the original intent of the constitutional framers." *State* v. *Joyner,* 225 Conn. 450, 462, 625 A.2d 791 (1993). Because the mandate of the committee was to render statutes that conformed to the constitution and because that was the purpose of passage of the "limitations," we begin our analysis by using the six year accrual statute as that which governed legal malpractice as of the time of the constitution. We conclude that there was then a common law right to sue for legal malpractice and a statutory limitation on the assertion of the right, namely that it had to be asserted within six years of its accrual.

Our next question is whether § 52-577 as applied to the plaintiff restricts or abolishes a right to redress that the plaintiff would have had in 1818. This issue is one of first impression because it is the first time an appellate court is required to assess the constitutionality of § 52-577 where there is no other statute granting an alternative to the enforcement of a right that existed in 1818.[6] See *McDonald* v. *Haynes Medical Laboratory, Inc.,* 192 Conn. 327, 335, 471 A.2d 646 (1984) (*Speziale, J.,* concurring).

Actions for legal malpractice based on negligence are subject to § 52-577, the tort statute of limitations. *Shuster* v. *Buckley,* supra, 5 Conn. App. 477. Section

---

[6] The defendant argues that even if § 52-577 restricts or abolishes the plaintiff's cause of action, there is no constitutional deprivation because she had a reasonable alternative to the enforcement of her right, namely an action in contract. The plaintiff asserts that she has no action in contract and claimed none. An action in contract and one in tort are two conceptually distinct theories of recovery, both of which existed at common law. One is not a reasonable alternative of the other that was provided by the legislature.

52-577 is a statute of repose "in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues." *Zapata* v. *Burns*, 207 Conn. 496, 508, 542 A.2d 700 (1988); see *Prokolkin* v. *General Motors Corp.*, 170 Conn. 289, 294–97, 365 A.2d 1180 (1976). Here, the plaintiff claims that her common law right to bring a legal malpractice action in tort, as it existed in 1818, was unconstitutionally abolished by the enactment of § 52-577 because it prevents her from asserting a claim arising out of an injury she discovered after the time period in which to bring the claim had expired.

A number of cases have involved the issue of whether § 52-577 and other legislation is constitutional in light of article first, § 10, of the Connecticut constitution, but none involves the factual pattern of this case. See *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 592 A.2d 912 (1991); *Stein* v. *Katz*, 213 Conn. 282, 567 A.2d 1183 (1989); *Dubay* v. *Irish*, 207 Conn. 518, 542 A.2d 711 (1988); *Zapata* v. *Burns*, supra, 207 Conn. 496; *Ecker* v. *West Hartford*, supra, 205 Conn. 219; *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 512 A.2d 893 (1986); *Gentile* v. *Altermatt*, 169 Conn. 267, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Conway* v. *Wilton*, 39 Conn. App. 280, 664 A.2d 327 (1995). Some of these cases involved claims for which there was no cause of action in 1818 and, therefore, the statutory limitation was found constitutional. *Stein* v. *Katz*, supra, 287–88 (survival statutes); *Dubay* v. *Irish*, supra, 529–30 (suit against parent by child); *Zapata* v. *Burns*, supra, 516 (architect or engineer where there was no privity between alleged wrongdoer and plaintiff); *Ecker* v. *West Hartford*, supra, 234–35 (wrongful death).

*Daily* v. *New Britain Machine Co.*, supra, 200 Conn. 562, and *Gentile* v. *Altermatt*, supra, 169 Conn. 267, are two cases that test the constitutionality of a statute of

limitations, in view of article first, § 10, where the cause of action did exist in 1818. *Daily* involved an action for injuries sustained by the plaintiff as the result of an accident at work. The plaintiff claimed that the product liability statute of limitations was unconstitutional under article first, § 10, of the Connecticut constitution because it restricted the common law right to bring an action for a defective product. The court determined that even though this cause of action existed at the time the constitution was adopted, an alternative remedy, the workers' compensation law, provided a reasonable alternative to the product liability claim. *Daily* v. *New Britain Machine Co.*, supra, 585–86. Therefore, the product liability statute of limitations was constitutional. Id., 585. *Gentile* involved an action in negligence for injuries sustained in a car accident, claiming that the no-fault insurance legislation abolished common law rights that existed in 1818. The court concluded that the legislatively created remedy for injury from negligence sustained in an automobile accident was constitutional as a reasonable alternative to the common law cause of action for such negligence. *Gentile* v. *Altermatt*, supra, 292–94. *Gentile* did not involve § 52-577 but the principles discussed are relevant.

*Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 179, is the most recent pronouncement on the constitutionality of a statute that was claimed to violate article first, § 10. *Sanzone* held that General Statutes § 52-557n (a) does not unconstitutionally deprive plaintiffs of a right to bring an action that had existed in 1818 at common law. The statute is a portion of the Tort Reform Act of 1986, barring tort claims against a municipality arising out of an accident allegedly caused by a defective highway. Id., 196–97. The trial court determined that the statute could constitutionally require General Statutes § 13a-149 to be the exclusive remedy for such claims. Id. The focus of the test of

constitutionality conducted by the court rested on an evaluation of whether some form of legal recourse was retained for the cause of action even if the legislature limited the availability of a common law cause of action that existed in 1818. Id., 196–200.

Because there is still redress under § 13a-149 for actions against municipalities arising out of highway and bridge defects, the legislature could modify the exact common law remedy that existed in 1818, even though the legislation limits the right of redress. Section 13a-149 requires that the defect be the sole proximate cause of the injury, does not allow consequential damages, and requires a notice to the municipality within ninety days, all of which were conditions that did not exist in 1818. "It is true that some plaintiffs who are limited to their recourse under § 13a-149 may be deprived of a remedy. The plaintiff who fails within ninety days to provide the municipality with the statutorily required notice will be barred from any recovery." Id., 198. A challenge to the constitutionality of § 13a-149 on the ground that its notice provision violated article first, § 10, of our constitution was rejected. See *Shalley* v. *Danbury & Bethel Horse Railway Co.*, 64 Conn. 381, 387, 30 A. 135 (1894).

Reasonable conditions on a cause of action do not amount to a violation of the constitution. Id. A strict and inflexible interpretation of article first, § 10, could affect the legislature's ability to pass, enact and repeal laws. "Such an encumbrance upon the legislature would freeze common law rights in perpetuity." F. McGovern, "The Variety, Policy and Constitutionality of Product Liability Statutes of Repose," 30 Am. U. L. Rev. 579, 616–17 (1981).

The common law right that the plaintiff claims was abridged by the passage of § 52-577 is the right to sue an attorney for legal malpractice in tort. Section 52-577

does not, on its face, restrict or abridge this cause of action, but, rather, only establishes the time period in which a plaintiff must assert this right. Therefore, § 52-577 restricts the right only to the extent that it restricts the time for bringing the action. By analogy, if the § 13a-149 bar of an action against a municipality for injuries arising out of highway defects if notice is not given within ninety days, an action that existed at common law; see *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 196–97 n.13; can survive an attack on its constitutionality, we conclude that § 52-577 can also survive such an attack.

"There are two principal reasons generally given for the enactment of a statute of repose: (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older [claims] impose." (Citation omitted; internal quotation marks omitted.) *Daily* v. *New Britain Machine Co.*, supra, 200 Conn. 582–83.

Statutes of repose are constitutional enactments that involve a balancing of the hardship caused by the potential bar of a just claim with the advantage of barring stale claims. Id., 583. Section 52-577 does not alter the common law cause of action of legal malpractice. It limits its availability but legal redress for the action still exists. Statutes of limitation are generally procedural. *Baxter* v. *Sturm, Ruger & Co.*, 230 Conn. 335, 347, 644 A.2d 1297 (1994); *Ecker* v. *West Hartford*, supra, 205 Conn. 231–32. They function as a qualification of the remedy to enforce the right; *Baxter* v. *Sturm, Ruger & Co.*, supra, 347; and limit the time in which to bring the

action. *Ecker* v. *West Hartford,* supra, 231–32. They do not in themselves create or negate a cause of action, and simply act as a bar to a remedy otherwise available. Id. When a right exists at common law, a statute of repose "functions only as a qualification on the remedy to enforce the preexisting right." *Baxter* v. *Sturm, Ruger & Co.,* supra, 347.

The legislature has not tampered with the cause of action here that existed at common law in 1818. It has, however, amended the procedural aspect of enforcing the right by limiting the time within which the action could have been brought. The action, which had to have been brought within six years after the right of action accrued, now must be brought within three years from the date of the act or omission complained of. In limiting the time for bringing an action, even though it is possible that on the date of the expiration of the limitation period no injury has yet been sustained, the legislature has not acted unconstitutionally. See *Vilcinskas* v. *Sears, Roebuck & Co.,* 144 Conn. 170, 174, 127 A.2d 814 (1956). The statute as applied to the plaintiff was not unconstitutional.

The judgment is affirmed.

In this opinion the other judges concurred.