[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#170 AND #172)
In October, 1987, Edward A. Cantor ("Cantor") engaged the services or Boris W. Kirilloff ("Kirilloff"), a principal in Bold Craft Engineering Corporation to design a motor sailing yacht named "The Other Woman." Kirilloff approached Industrial Power Systems, Inc. ("IPS") to design a shore power system for the yacht.
In March of 1990, IPS informed Kirilloff that it would supply constant voltage transformer technology to be applied to build a shore power system and supplied Kirilloff with wiring diagrams to be utilized to connect shore power system to the yacht's electrical system. Thereafter, on March 15, 1990, Bold Craft CT Page 9314 through its purchasing arm, Bold Yachts, placed an order with IPS for the purchase of the 120 KVA three phase constant voltage assembly, which comprised the yacht's shore power system. In response to that order, IPS placed a purchase order with Neeltran, Inc. ("Neeltran") to purchase the equipment ordered by Bold Yachts. The purchase order requested a transformer assembly that met the specific performance criteria set forth in those documents. Neither the purchase order or Neeltran's acknowledgment sets forth any requirement that the transformer assembly had to function within the unique confines of any vessel's specific electrical system. Neeltran's acknowledgment to IPS' purchase order contained the following warranty:
 WARRANTY: The company warrants that its delivered equipment will be of the kind and quality described in the order or contract and will be free of defects in the workmanship and material. Should any failure to conform to this warranty appear within two years after the date of shipment, the Company shall, upon prompt notification thereof and substantiation that the equipment has been stored, installed, operated and maintained in accordance with the Company's recommendations and standard industry practice, correct such nonconformities, at its option, either by repairing any defective part or parts, or by supplying a separate replacement part or parts, F.O.B. factory. However, if the Company has installed the equipment or furnished field engineering services with respect to its installation, and provided such installation has not been delayed by Purchaser, said two years shall run from the completion of the installation. In no event shall the Company be responsible for providing working access to the defect, including disassembly and reassembly of the equipment or for providing transportation to and from repair facility or factory.
 The conditions of any test shall be mutually agreed upon and the Company shall be notified of, and may be represented at, all tests that may be made. CT Page 9315
 In case of trouble or failure, the type of lightning protector and the application of the lightning protective device to the apparatus will be checked be determine the liability of Neeltran, Inc.
 THIS WARRANTY IS EXCLUSIVE and in lieu of all warranties of merchantability, fitness for purpose, quality, or other warranties, whether written, oral, implied, except of title and against patent infringement
 NO OTHER WARRANTIES SHALL BE IMPLIED, AND ANY STATUTORY WARRANTIES SHALL BE DEEMED WAIVED.
 Correction of non-conformities in the manner and for the period of time provided above shall constitute fulfillment of all liabilities of Company to Purchaser and remedies provided and shall be Purchaser's sole remedies for any failure of the Company with the warranty provisions, whether claims by Purchaser are based upon contract, tort (including negligence) or otherwise. The warranties and remedies set forth herein are conditional upon the proper receipt, handling, storage, and installation of the equipment supplied hereunder and upon the equipment having been operated and maintained in accordance with the Company's recommendations and standard industry practice and not having bee subjected to accident, alteration, abuse of misuse.
Neeltran's acknowledgement also provided a section limiting liability. That section provided that:
 The Company shall not be liable for special, indirect, or consequential damages. The remedies of the Purchaser as set forth herein are exclusive and the liability of the Company with respect to any contract or sale or anything done in connection therewith, whether in contract, in tort, under any warranty, or otherwise shall not, except as expressly CT Page 9316 provided herein, exceed the price of the equipment or part on which such liability is based.
On May 10, 1990, Australian Yacht Builders Pty., Ltd. ("AYB") placed a purchase order with Bold Craft for the purchase of the transformer assembly. That same day, Bold Craft issued an invoice to AYB for $39,000 on account of the purchase being made by AYB. On May 14, 1990, Bold Yachts issued a purchase order for the subject equipment to IPS. By that purchase order, Bold Yachts indicated that the purchase was for resale and that the transformer was for "A.Y.B. Hull #21"[1] and the Bold Yachts would advise of its shipping instructions Bold Yachts paid IPS $34,000 for its purchase of the transformer assembly.
Neeltran manufactured the transformer assembly and then, prior to shipment, tested the equipment with a representative of IPS present and found it to perform to the specifications of the purchase order. On May 24, 1990, the transformer assembly was delivered, pursuant to Bold Yachts delivery instructions, to Cantor in Linden, New Jersey. The transformer assembly was shipped to Australia and installed in "The Other Woman" by AYB.
In March of 1991, the transformer system was installed on the yacht, and upon being activated, produced abnormal voltage readings. The shipyard notified IPS of the unusual voltage by a fax addressed to Rick Chapple on March 22, 1991. IPS told Kirilloff that any necessary corrections or repairs would be undertaken when the yacht reached the east coast.
On August 23, 1991, the United States of America, Department of Transportation, United States Coast Guard issued a Certificate of Documentation for "The Other Woman" to Edward A. Cantor Corporation ("EAC Corporation"). At all times subsequent to August 23, 1991, EAC Corporation has been identified as the yachts owner on that certificate.
In February of 1992, the yacht arrived in Miami, Florida. A representative of IPS met with Kirilloff on board the vessel to examine the shore power system. Unable to determine the cause of the power system's failure, the yacht was then sailed to Jacksonville, Florida, where IPS conducted further investigations. During the first week in March, IPS informed Kirilloff that the transformer terminals had been mislabeled by Neeltran. On March 10, 1992, IPS personnel relabeled the CT Page 9317 terminals and reconnected the wiring. Following this repair, the shore power system would still not perform.
On March 11, 1992, representatives from IPS and Kirilloff met with Herb Light, a consultant retained by Neeltran to inspect the shore power system. Mr. Light determined that it was necessary for Cantor to ship the transformers to the Neeltran manufacturing facility in New Milford, Connecticut for adjustment and repairs. Upon completion of the repairs, and before the transformer assembly was delivered to the yacht, it was tested with a representative of the yacht present. Upon the satisfactory conclusion of these tests, the transformer assembly was shipped back to Jacksonville and reinstalled aboard the yacht on October 15, 1992. Upon reinstallation of the transformer assembly, problems with the transformer assembly recurred and the assembly would not properly perform.
On or about February 1, 1993, IPS informed Kirilloff that they were unable to secure satisfactory results from Neeltran and that Neeltran would not deliver a properly functioning shore power system and that the transformers comprising the system should be removed from the vessel. The transformers were removed, at Cantor's expense, and placed in storage at Pier 4 in Jacksonville.
On August 17, 1995 the plaintiffs, Cantor and Bold Craft, filed a six count amended complaint against the defendants, Neeltran and IPS. Count one alleges that the defendants breached their implied warranty of merchantability with regard to the transformer assembly. In count two the plaintiffs allege that the defendants breached their implied warranty of fitness for a particular purpose. Count three alleges that the defendants breached their express warranty of fitness for a particular purpose. In count four the plaintiffs assert a claim against the defendants for violation of the Magnuson-Moss Consumer Protection Act. Count five is directed against Neeltran and alleges revocation of the plaintiffs' acceptance of the transformer assembly. Count six alleges negligence on the part of Neeltran with respect to the repairs and alterations Neeltran made to the transformer assembly.
On April 29, 1997, IPS filed its motion for summary judgment as to counts one through four directed at IPS. IPS moves for summary judgment on the grounds that (1) Cantor does not own the vessel which is the subject of this action and lacks standing to CT Page 9318 individually recover damages that were sustained by the yacht's true owner, EAC Corporation; (2) the breach of warranty claims set forth in the amended complaint are barred by the statute of limitations; (3) no privity of contract exists between IPS and the plaintiffs with respect to the transformer assembly; (4) the transaction is not subject to the Magnuson-Moss Consumer Protection Act; (5) the plaintiffs have suffered no damages as a result of the causes set forth in the amended complaint.
Neeltran filed its motion for summary judgment on June 13, 1997. Neeltran moves for summary judgment on all six counts on the grounds that (1) neither plaintiff has the requisite standing to pursue the matter as neither has any ownership interest in the yacht; (2) neither plaintiff has any warranty rights that can be asserted against Neeltran as neither plaintiff had any contractual relationship with Neeltran and the goods manufactured by Neeltran that were installed on the yacht were not a consumer product where privity of contract might not be required; (3) neither plaintiff has a claim under the Magnuson-Moss Consumer Protection Act as neither plaintiff qualifies as a consumer; (4) neither plaintiff has the requisite standing to assert a claim for revocation of the goods in question; (5) neither plaintiff has the requisite standing to assert a claim of negligent repair, nor is there any evidence that the transformer assembly is defective in any way.
The parties argued both motions for summary judgment on August 4, 1997 and this memorandum of decision will address both defendants' motions for summary judgment.
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Doty v. Mucci, 238 Conn. 800, 805,679 A.2d 945 (1996). A material fact is a fact that will make a difference in the result of the case. Hammer v. Lumberman's Mutual CasualtyCo., 214 Conn. 573, 578, 573 A.2d 699 (1990). "The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." Doty v. Mucci, supra, 805. "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact."Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105, CT Page 9319639 A.2d 507 (1994). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . ." Doty v. Mucci, supra, 805.
 I
"[I]n a civil action the plaintiff must prove as well as allege damages." Ross v. Schade, 7 Conn. Sup. 443, 446 (1939). In IPS' request for admissions to Bold Craft, number 30 states as follows:
 Bold Craft Engineering Corporation has suffered no monetary loss or damage as a result of the matters asserted in the amended complaint.
Answer: Request #30 is admitted.
The amended complaint alleges that Bold Craft was acting as the agent in fact for Cantor. The Restatement of Agency, Second, § 363 through 375 enumerate the situations when an agent may bring an action in its own name. None of those situations are applicable in this case. No grounds exist for Bold Craft to bring an action against the defendants in its capacity as Cantor's agent and Bold Craft has suffered no monetary loss or damage as a result of the allegations in the amended complaint. Accordingly, IPS and Neeltran's motions for summary judgment as to Bold Craft are granted.
 II A
The defendants argue that Cantor lacks standing to prosecute this action because he is not the registered owner of "The Other Woman." EAC Corporation, however, did not become the owner of the yacht until August 23, 1991. The plaintiffs contracted for the transformer assembly in 1990 and it was delivered by IPS to Cantor in New Jersey in May of 1990. Title to the yacht was not placed in EAC Corporation until after the purchase of the transformer assembly.
Because Cantor was not a party to the contract between Bold Yachts and IPS, he cannot prevail in this suit on that contract unless he was a third party beneficiary thereof. "It is axiomatic CT Page 9320 that the parties to a contract or a contemplated beneficiary thereof may sue to enforce the promises of that contract." Atlasv. Miller, 20 Conn. App. 680, 682, 570 A.2d 219 (1990). "In determining whether a person has a right of action as a third party beneficiary, the ultimate test to be applied is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party beneficiary and that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." (Internal quotation marks omitted.) Grigerik v. Sharpe,45 Conn. App. 775, 783, ___ A.2d ___ (1997). Absent definitive contract language, a trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact.Lawson v. Whitey's Frame Shop, 241 Conn. 678, 686, ___ A.2d ___ (1997).
Cantor contends that he has an interest in the action because he ultimately paid for the transformer assembly and the expenses associated with the repairs to the assembly. In Kirilloff's affidavit, he states that IPS was aware that the project was undertaken for the benefit of Cantor. Furthermore, the evidence presented by the plaintiff supports the conclusion that Neeltran was aware that the transformer assembly was for someone other than IPS. The question of whether Cantor was a contemplated beneficiary under the contract between IPS and Bold Yachts is a question of fact.
 B
In addition, IPS argues that the claims against it were brought after the expiration of the statute of limitations. Pursuant to General Statutes § 42a-2-725 (1), an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. General Statutes §42a-2-725 (2). A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. Id.
The section, however, does not alter the law on tolling of the statute of limitations. General Statutes § 42a-2-725 (4). CT Page 9321
IPS argues that the cause of action began to accrue on May 24, 1990, when the transformer assembly was delivered and that Cantor did not commence this action until August 17, 1995, over five years after delivery. Cantor, however, argue that IPS' constant assurances that the equipment will be made to perform accompanied by repeated repair attempts and adjustments constituted a continuing course of conduct, which tolled the statute of limitations.
Our Supreme Court has recognized "that the statute of limitations, in the proper circumstances, may be tolled under the continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date."Blanchette v. Barrett, 229 Conn. 256, 265, 640 A.2d 74 (1994). "In its modern formulation, [the Supreme Court has] held that in order to support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after the commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) Id., 275. "The continuous course of conduct doctrine in conspicuously fact-bound." (Internal quotation marks omitted.)Sanborn v. Greenwald, 39 Conn. App. 289, 295, 664 A.2d 803
(1995).
The transformer assembly was not installed on the yacht until March of 1991. Upon the shipyard's report of unusual voltage readings, IPS stated that it would make the appropriate repairs or adjustments. In February of 1992, an IPS representative met with Kirilloff on board the yacht to examine the transformer assembly and when unable to find the problem conducted further examination upon the yacht's arrival in Jacksonville. In March of 1992, the assembly was shipped to Neeltran for further repairs and adjustments and then returned to the yacht on October 15, 1992.
This court finds in this instance that there is a genuine issue of material fact as to whether the statute of limitations may be tolled in this case under the continuing course of conduct CT Page 9322 doctrine.
 C
The defendants argue that the plaintiff, Cantor, is not in privity of contract with the defendants and may not enforce the contract nor the warranties. "One who is neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract." Tomlinson v. Board ofEducation, 226 Conn. 704, 718, 629 A.2d 333 (1993). Because this court has determined that a question of fact exists as to whether Cantor has standing to enforce the contract, a question of fact exists as to whether Cantor may enforce the implied or express warranties of the contract. Accordingly, the defendants' motion for summary judgment is denied as to count four of Cantor's amended complaint.
 III
The defendants also argue that the transformer assembly is not a consumer product under the Magnuson-Moss Consumer Protection Act, 15 U.S.C. § 2301 et seq. The term consumer is defined as a buyer (other than for the purpose of resale) of any consumer product, any person — whom such product is transferred during the duration of an implied warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of the warranty (or service contract) or under applicable state law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract). 15 U.S.C. § 2301 (3).
The statute further defines a consumer product as any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed). The defendants argue that the transformer assembly is not a consumer product as defined by the Act. According to Bill Young's affidavit the assembly is equipment of a size and type typically used in industrial settings for power management and control. Moreover, IPS has never known such equipment to be used for personal, family or household purposes. Cantor, on the other hand, argues that the transformer assembly was purchased for use in his personal yacht and that it qualifies as a consumer product pursuant to the Act. CT Page 9323
The defendants further contend that the plaintiffs' allegation that at or about the time of sale the yacht would be put to use as a commercial charter also supports their proposition that the transformer assembly is not a consumer product. However, Cantor's affidavit states that he has always maintained the vessel personally since the vessel does not earn income sufficient to cover expenses.
In viewing the evidence presented in a light most favorable to the plaintiffs, this court finds that a genuine issue of material fact exists with regard to whether the transformer assembly is a consumer product. Moreover, because this court has determined that a question of fact exists as to whether Cantor has standing, under Connecticut law, to enforce the contract between IPS and Bold Yachts, a question of fact exists as to whether Cantor is a consumer under the Magnuson-Moss Consumer Protection Act. Accordingly, the defendants motion for summary judgment as to count four is denied.
 IV
In count five Cantor alleges that on January 26, 1993, by a letter addressed to Antonio Capanna, Jr. of Neeltran and Bill Young of IPS, he explicitly revoked acceptance of the transformer assembly. Neeltran first argues that Cantor lacks the ownership interest in the assembly to effect a revocation. For the reasons stated above, this is a question of fact and summary judgment is not warranted on this ground.
Secondly, Neeltran argues that claimed basis for attempting a revocation was an alleged failure of the transformer assembly system to function in that it will not provide a constant voltage to the ship's electrical system. Neeltran contends that there was nothing in contract that warranted that the transformer assembly would function in the yacht's electrical system. Cantor, on the other hand, argues that given the extensive interaction between IPS and Neeltran, with respect to the specifications of the transformer assembly, a question of fact exists as to whether Neeltran was required to produce transformers which would regulate shore power and distribute the same on board the yacht. This court agrees with Cantor that a genuine issue of material fact exists and therefore denies Neeltran's motion for summary judgment as to count five. CT Page 9324
 V
Neeltran also moves for summary judgment on the negligence count, arguing that Cantor has failed to provide any evidence with respect to any duty Neeltran to him and that there is no evidence that the transformer assembly does not meet the performance requirements set forth in Neeltran's contract with IPS.
It is well established that "summary judgment procedure is especially ill-adapted to negligence case, where, as here, the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation." (Internal quotation marks omitted.) Michaud v. Gurney, 168 Conn. 431, 434,362 A.2d 857 (1975). "A determination of negligence is necessarily one of fact." Id. "As such, issues of negligence are ordinarily not susceptible of summary adjudication by should be resolved by trial in the ordinary manner." Spencer v. Good EarthRestaurant Corp., 164 Conn. 194, 199, 319 A.2d 403 (1972). Accordingly, Neeltran's motion for summary judgment as to count six is denied.
 VI
The defendant's, IPS', motion for summary judgment is denied because each ground IPS asserts in support of the motion raises a genuine issue of material fact. A genuine issue of material fact exists as to: 1) whether the plaintiff, Cantor, is a third party beneficiary of the contract between IPS and Bold Yachts; 2) whether the statute of limitations may be tolled in this case; 3) whether privity of contract exists between Cantor and IPS; and 4) whether Cantor is a consumer under the Magnuson-Moss Consumer Protection Act.
The defendant's, Neeltran's, motion for summary judgment is granted as to the plaintiff, Bold Craft, and denied as to the plaintiff Cantor. Bold Craft does not have standing to bring an action against Neeltran because Bold Craft suffered no monetary loss or damage as a result of the allegations in the amended complaint. Conversely, a genuine issue of material fact exists as to: 1) whether the plaintiff, Cantor, is a third party beneficiary of the contract between IPS and Bold Yachts; 2) whether privity of contract exists between Cantor and IPS; 3) whether Cantor is a consumer under the Magnuson-Moss Consumer CT Page 9325 Protection Act; and 4) whether Neeltran was negligent with respect to the repairs and alterations made to the transformer assembly.
HON. WALTER M. PICKETT, JR. State Judge Referee