EDMUND H. LOHNES *v.* HOSPITAL
OF SAINT RAPHAEL ET AL.
(AC 32170)

Bear, Espinosa and Borden, Js.

Argued May 23—officially released November 15, 2011

*Albert J. Oneto IV*, with whom, on the brief, was *Peter E. Ricciardi*, for the appellant (plaintiff).

*Eric J. Stockman*, with whom, on the brief, was *Vimala B. Ruszkowski*, for the appellee (named defendant).

*Frederick J. Trotta*, with whom, on the brief, was *Janine W. Hodgson*, for the appellee (defendant Vinu Verghese).

*Opinion*

BORDEN, J. The plaintiff, Edmund H. Lohnes, appeals from the judgment of the trial court granting the motions to dismiss his complaint filed by the defendants, Vinu Verghese, an emergency room physician, and the Hospital of Saint Raphael (hospital), in connection with medical care rendered by Verghese. The court granted the defendants' motions to dismiss on the ground that the written opinion accompanying the plaintiff's complaint did not satisfy General Statutes § 52-190a. On appeal, the plaintiff claims that the court improperly: (1) concluded that the plaintiff's expert was not a "similar health care provider" within the meaning of General Statutes §§ 52-190a and 52-184c;[1] (2) interpreted §§ 52-190a and 52-184c in a manner that (a)

[1] The plaintiff also claimed that the court improperly concluded that the plain language of § 52-190a (c) required the dismissal of the plaintiff's action. The plaintiff abandoned this claim at oral argument in this court, in acknowledgment of our Supreme Court's ruling in *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 26, 12 A.3d 865 (2011) (§ 52-190a [c] requires dismissal of medical malpractice complaints that are not supported by opinion letters authored by similar health care providers).

unreasonably restricted the plaintiff's common-law right to pursue a judicial remedy for medical negligence, in violation of the open courts provision of article first, § 10, of the constitution of Connecticut and (b) resulted in an arbitrary and irrational dismissal of the plaintiff's medical negligence action, without due process of law, in violation of the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut; and (3) dismissed the plaintiff's action on the basis of a perceived circumstantial defect in the plaintiff's pleadings, in violation of General Statutes § 52-123. We disagree with the plaintiff on all of his claims and, therefore, affirm the judgment of the trial court.

The plaintiff brought this action claiming medical malpractice by Verghese and liability of the hospital pursuant to the doctrine of respondeat superior. The defendants each moved to dismiss the complaint. The trial court granted the motions and dismissed the action. This appeal followed.

In his complaint, the plaintiff alleged the following facts, the truth of which we assume for purposes of his appeal. See *Gold* v. *Rowland*, 296 Conn. 186, 200–201, 994 A.2d 106 (2010). On June 22, 2007, the plaintiff was admitted to the emergency department at the hospital, complaining of shortness of breath associated with pain and tightness in his chest. Upon being admitted to the hospital, the plaintiff advised the hospital that he had a prior history of nonsteroidal anti-inflammatory drug (NSAID) sensitive asthma, which, in the past, had caused him to suffer shortness of breath, loss of consciousness and vomiting as a result of ingesting the NSAID aspirin. The plaintiff subsequently was put under the care of Verghese for treatment of his pulmonary symptoms. At that time, the plaintiff reiterated to Verghese that he was highly allergic to NSAIDs and, despite having notice of that allergy, Verghese administered

several pills to the plaintiff, one of which was the NSAID Motrin. As a result of ingesting the NSAID, the plaintiff required intubation and mechanical ventilation for acute, hypercapnic respiratory failure. Over the next four days, the plaintiff required cardioversion postextubation for atrial fibrillation.

Following that treatment, the plaintiff commenced this medical negligence action against the defendants. In an attempt to comply with §§ 52-190a and 52-184c,[2] the plaintiff attached to his complaint an opinion letter from a pulmonologist from National Jewish Health in Denver, Colorado. The defendants each moved to dismiss on the ground that the author of the plaintiff's opinion letter was not a similar health care provider within the meaning of §§ 52-190a and 52-184c. In response to the plaintiff's objection to the motions to dismiss, Verghese submitted an affidavit stating: "I am a physician licensed to practice emergency medicine by the [s]tate of Connecticut," and, "I am Board Certified in Emergency Medicine and have been a Diplomate of the American Board of Emergency Medicine since December of 2005." Thereafter, the court granted the defendants' motions to dismiss.

---

[2] General Statutes § 52-190a (a) provides in relevant part that before filing a personal injury action against a health care provider, a potential plaintiff must make "a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . ." In order to show said good faith, the complaint must be accompanied by a written and signed opinion of a similar health care provider stating that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion.

General Statutes § 52-184c (c) provides in relevant part that "[i]f the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty . . . ."

## I

## TIMELINESS OF MOTION TO DISMISS

As a threshold matter, we address the issue, raised by the plaintiff in a supplemental authorities letter submitted pursuant to Practice Book § 67-10,[3] that our Supreme Court's recent decision in *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 21 A.3d 451 (2011), is relevant to the outcome of this case. In response, this court ordered the parties to file simultaneous supplemental briefs addressing the following question: "What effect, if any, does the recent decision of the Supreme Court in *Morgan* v. *Hartford Hospital* [supra, 388] have on the decision in this appeal?"

The plaintiff claims that the ruling in *Morgan* is applicable to this appeal and mandates denial of Verghese's motion to dismiss because he did not file it within thirty days of filing his appearance, pursuant to Practice Book § 10-30.[4] We disagree.

In *Morgan*, our Supreme Court concluded that "because the written opinion letter of a similar health care provider must be attached to the complaint in proper form, the failure to attach a proper written opinion letter pursuant to § 52-190a constitutes insufficient service of process and, therefore, Practice Book § 10-32 and its corresponding time and waiver rule applies by its very terms. Because we conclude that the absence of a proper written opinion is a matter of form, it implicates personal jurisdiction." *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 402. The court held that the

---

[3] Practice Book § 67-10 provides in relevant part: "When pertinent and significant authorities come to the attention of a party after the party's brief has been filed . . . a party may promptly advise the appellate clerk of such supplemental authorities, by letter, with a copy certified to all counsel of record . . . ."

[4] We note that the challenge in the plaintiff's supplemental brief pertains only to Verghese and not to the hospital. The plaintiff does not contend that the hospital's motion to dismiss was untimely.

defendants waived their right to challenge the sufficiency of the written opinion letter through a motion to dismiss because they failed to file the motion within the thirty day time period provided by Practice Book § 10-30 and they filed "numerous pleadings before filing their motion to dismiss." Id., 404. In fact, the motion to dismiss was filed nineteen months after the complaint. Id., 403.

In the present case, the return date on the complaint was September 22, 2009. Verghese filed his appearance on August 31, 2009, twenty-two days *before* the return date. Furthermore, Verghese filed his motion to dismiss, prior to the filing of any other pleadings, on October 21, 2009, which, as the plaintiff stated in his supplemental brief, was fifty-one days after Verghese filed his appearance.

We recognize that Practice Book § 10-30 states in part: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, *but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . .*" (Emphasis added.) We note, however, that Practice Book § 10-8 provides in relevant part: "[I]n civil actions, pleadings, including motions and requests addressed to the pleadings, shall first advance within thirty days from the return day . . . ." Our rules of practice are designed "to facilitate business and advance justice"; thus, "they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice." Practice Book § 1-8. Reading Practice Book §§ 1-8, 10-8 and 10-30 together, therefore, we conclude, that in the present matter, Verghese should not be penalized for filing an appearance prior to the return date, and that in this case, where he did so, the most reasonable way to read these provisions of our rules of practice

is to allow thirty days from the return date, not the date of the appearance, to file a motion to dismiss.

Indeed, as Verghese suggests, where a defendant files an early appearance—i.e., before the return date—to credit the plaintiff's literal reading of the rules of practice could encompass a situation where the defendant who files an appearance more than thirty days prior to the return date could be required to file a motion to dismiss even before the case has been officially returned to court. We do not think that our rules of practice require such a bizarre outcome.

These circumstances are different from those in *Morgan*, in which the plaintiff waited nineteen months to file the motion to dismiss and filed numerous pleadings prior to the motion to dismiss. Thus, in the present case, Verghese had thirty days from September 22, 2009, which would have been October 23, 2009,[5] to file his motion to dismiss. Verghese filed his motion to dismiss on October 21, 2009, and therefore his motion was timely.

## II

### SIMILAR HEALTH CARE PROVIDER

The plaintiff next claims that the court improperly granted the defendants' motions to dismiss on the ground that his expert opinion letter was not authored by a "similar health care provider" within the meaning of §§ 52-190a and 52-184c. Specifically, the plaintiff claims that the court improperly found that, at the time Verghese treated the plaintiff, he was board certified in emergency medicine as an emergency medicine specialist and that he was acting within the area of emergency medicine when he treated the plaintiff. We disagree.

---

[5] Practice Book § 63-2 provides in relevant part: "In determining the last day for filing any papers, the last day shall, and the first day shall not, be counted. Time shall be counted by calendar, not working, days. . . ."

We first set forth the appropriate standard of review. "[O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable standard of review for the denial of a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions of the trial court or its factual determinations." (Internal quotation marks omitted.) *State* v. *Winter*, 117 Conn. App. 493, 500, 979 A.2d 608 (2009), cert. denied, 295 Conn. 922, 991 A.2d 569 (2010).

We now turn to the pertinent language of the relevant statutes. Section 52-190a (a) provides in relevant part that before filing a personal injury action against a health care provider, a potential plaintiff must make "a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. . . ." Furthermore, the statute requires that to show a good faith belief, the complaint must be accompanied by a written and signed opinion of a similar health care provider stating that there appears to be evidence of medical negligence and including a detailed basis for the formation of that opinion. Section 52-184c (c) provides in relevant part that "[i]f the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his

specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'." Thus, in this case, in order to satisfy the requirements of §§ 52-190a and 52-184c, the plaintiff was required to have, as the author of his opinion letter, one who was both (1) trained and experienced in emergency medicine and (2) board certified in emergency medicine.

With these principles in mind, we turn to the plaintiff's claim that the court erroneously found that Verghese was board certified in emergency medicine as an emergency medicine specialist. In support of this claim, the plaintiff contends that the affidavit supplied by Verghese is unclear on the issue of whether Verghese was board certified in emergency medicine at the time he treated the plaintiff. We are not persuaded by this cramped and narrow reading of the affidavit. Reading Verghese's affidavit in a reasonable manner, indeed, in the only common sense manner in which it can be read, clearly supports the court's finding that Verghese was trained and experienced in emergency medicine, and was board certified in emergency medicine at the time he treated the plaintiff. The affidavit explicitly states that Verghese was board certified in emergency medicine and has been a "Diplomate of the American Board of Emergency Medicine since December of 2005." It is well established, within the medical profession, that a "diplomate" is a person who has received a diploma and has been certified by a board within the appropriate profession. See Webster's Third New International Dictionary (2002) p. 638 (defining diplomate as "[o]ne who holds a diploma; *esp*; a physician certified as qualified generally or as a specialist by an agency recognized as professionally competent to grant such certification" [emphasis in original]); see also Random House Webster's Unabridged Dictionary (2d Ed. 2001) p. 558 (defining diplomate as "[a] person who has received a

diploma, *esp*; a doctor, engineer, etc., who has been certified as a specialist by a board within the appropriate profession" [emphasis in original]). Accordingly, we conclude that the evidence supports the court's finding that, when he treated the plaintiff, Verghese was a board certified emergency medicine specialist.

The plaintiff also claims that Verghese was acting outside of his specialty when he treated the plaintiff at the emergency department. Specifically, the plaintiff argues that Verghese was practicing pulmonology, rather than emergency medicine, when he treated the plaintiff. He contends, therefore, that the pulmonologist who provided an opinion letter in support of his medical negligence action qualifies as a similar health care provider under the exception carved out by § 52-184c (c), which states that "if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a similar health care provider . . . ." (Internal quotation marks omitted.) We are not persuaded.

At the hearing before the trial court, the plaintiff's counsel conceded that his complaint did not contain an express allegation that Verghese was practicing outside of his field of practice. In light of that concession, the court declined to infer from the plaintiff's "single and fleeting reference to 'treatment of his pulmonary symptoms' " that the complaint contained any specific allegations of negligence based on Verghese's having acted outside his area of specialty. We agree with this determination.

Moreover, the underlying facts as alleged do not support the plaintiff's claim. It is undisputed that the plaintiff went to the emergency department, not to a pulmonologist, to receive his treatment. He was complaining of shortness of breath and tightness in his

chest, and he was treated for those symptoms. Moreover, his claims are founded on the premise that Verghese negligently administered Motrin in contraindication to the plaintiff's warnings; there is nothing in this allegation that, on its face, suggests pulmonology as opposed to emergency treatment. We agree with the trial court that this treatment was not outside the expertise of Verghese. Indeed, as the hospital suggests, in light of the fact that emergency medicine physicians are charged with rendering care to and treating patients with a potentially limitless variety of symptoms or injuries, the plaintiff's argument, namely, that the defendant was acting outside his area of specialty, potentially could yield a situation where no condition or illness would be considered within the scope of emergency medicine. Accordingly, there is no basis for the claim that, in treating the plaintiff for his symptoms in the emergency department of the hospital, Verghese was practicing outside his specialty of emergency medicine.

## III

### UNPRESERVED CLAIMS

The three remaining claims raised by the plaintiff on appeal were not raised in the trial court and hence are unpreserved. The plaintiff seeks to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In *Golding*, our Supreme Court held that a party can prevail on a claim of constitutional dimension not preserved at trial only if all of the following four conditions are met: (1) the record is adequate to review the claim; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the appellant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. Id. *Golding* review

is applicable in civil as well as criminal cases. *Perricone* v. *Perricone*, 292 Conn. 187, 212 n.24, 972 A.2d 666 (2009). We conclude that the plaintiff may not prevail on any of his *Golding* claims.

A

The plaintiff first claims that the court's interpretation of § 52-190a unreasonably restricted his common-law right to pursue a judicial remedy for medical negligence, in violation of the open courts provision of article first, § 10, of the constitution of Connecticut. We agree that his claim is subject to review under *Golding* because it satisfies the first two prongs in that it raises a constitutional claim involving a fundamental right and the record is adequate for review. We conclude, however, that the plaintiff's claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not exist.

Article first, § 10, provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Article first, § 10, has been viewed as a limitation on the legislature's ability to abolish common-law and statutory rights that existed in 1818. *Golden* v. *Johnson Memorial Hospital, Inc.*, 66 Conn. App. 518, 534, 785 A.2d 234, cert. denied, 259 Conn. 902, 789 A.2d 990 (2001). "Reasonable conditions on a cause of action do not amount to a violation of the constitution. . . . A strict and inflexible interpretation of article first, § 10, could affect the legislature's ability to pass, enact and repeal laws. Such an encumbrance upon the legislature would freeze common law rights in perpetuity." (Citation omitted; internal quotation marks omitted.) *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 304, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995).

In both *Golden* and *Sanborn*, the challenges centered on statutes of limitation, and this court concluded that, although the relevant statutes did limit a common-law right that existed in 1818, they did not restrict or abridge the cause of action because they merely established the time period within which the plaintiff could assert that right. Id., 301; *Golden* v. *Johnson Memorial Hospital, Inc.*, supra, 66 Conn. App. 536.

In the present case, the statute in question does not abolish the ability to bring a medical negligence case. The plaintiff in no way is deprived of his right to legal recourse. He merely is required to document, by means of a letter from a similar health care provider, that there is evidence to support such a claim before bringing suit. There is nothing onerous or insurmountable about this requirement.[6] The common-law right that the plaintiff claims was abridged by the application of § 52-190a is the right to bring a medical negligence action against the defendant. Section 52-190a restricts the right to bring an action for medical negligence only to the extent that it restricts claims that are unsubstantiated and without a good faith basis. Like the statutes of limitation at issue in *Sanborn* and *Golden*, § 52-190a is merely a procedural limitation that neither eliminates nor unreasonably burdens the plaintiff's right to legal recourse.

B

The plaintiff next claims that the court's interpretation of § 52-190a resulted in an arbitrary and irrational dismissal of the plaintiff's medical negligence action, without due process of law, in violation of the fourteenth amendment to the United States constitution

---

[6] In the plaintiff's brief, he intimates that the requirements of § 52-190a equate to a heightened pleading standard and require the plaintiff to prove the substance of the action in his pleadings. This argument is misguided, however, because § 52-190a does not require that the plaintiff prove any of the elements of his action, only that he illustrate through the opinion letter that there is a good faith belief that grounds exist for the action.

and article first, § 8, of the constitution of Connecticut. We again agree that this claim is subject to review because it satisfies the first two prongs of *Golding*. As with the plaintiff's first claim, however, this claim fails to satisfy the third prong of *Golding* because the alleged constitutional violation does not exist.

Although the plaintiff does not specify whether his due process claim is procedural or substantive, we construe it as substantive. The analytical framework for reviewing substantive due process claims is well established. In areas of social and economic policy, legislative classifications that are not drawn along suspect lines and that do not burden fundamental rights are reviewed under the deferential rational basis standard. See *Keane* v. *Fischetti*, 300 Conn. 395, 406, 13 A.3d 1089 (2011). The plaintiff does not contend that the statute in question burdens any fundamental rights or is drawn along suspect lines. Thus, the appropriate standard of review is rational basis.

We disagree with the plaintiff that there is no rational basis for § 52-190a. "Under rational basis review, the [e]qual [p]rotection [c]lause is satisfied [as] long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decision maker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . ." (Internal quotation marks omitted.) Id.; see also *Ramos* v. *Vernon*, 254 Conn. 799, 829, 761 A.2d 705 (2000).

Our Supreme Court in *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 12 A.3d 865 (2011), recently considered the purposes underlying § 52-190a and the 2005 amendments to that statute. As discussed in *Bennett*, the purposes of the original version of § 52-190a were

to discourage the filing of baseless lawsuits against health care providers and to prevent meritless medical malpractice actions. Id., 18. The requirement that the initial complaint include an opinion letter from a similar health care provider was added in 2005 "in order to help [e]nsure that there is a reasonable basis for filing a medical malpractice case under the circumstances and . . . eliminate some of the more questionable or meritless cases filed under the present statutory scheme." (Internal quotation marks omitted.) Id., 20.

Furthermore, the legislative history of the 2005 amendment illustrates that it was targeted at combating the problem that "some attorneys, either intentionally or innocently, were misrepresenting in the certificate of good faith the information that they had obtained from [medical] experts."[7] (Internal quotation marks omitted.) Id., 19; see also 48 H.R. Proc., Pt. 31, 2005 Sess., p. 9469, remarks of Representative Christel H. Truglia ("good faith requirement[s] [have] done little to address the escalating cost of medical liability insurance because this has not been enforced"). The legislative history also highlights the serious issues facing the state regarding escalating insurance premiums within the state's medical profession, and their impact on the quality and availability of medical care within the state. See 48 H.R. Proc., supra, p. 9470, remarks of Representative Robert M. Ward (noting that medical malpractice

---

[7] As originally enacted, § 52-190a (a) required "the plaintiff in any medical malpractice action to conduct 'a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the [plaintiff]' and to file a certificate 'that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant.' . . . The original statute did not require the plaintiff to obtain the written opinion of a similar health care provider that there appeared to be evidence of medical negligence, but permitted the plaintiff to rely on such an opinion to support his good faith belief." (Citation omitted.) *Dias* v. *Grady*, 292 Conn. 350, 357, 972 A.2d 715 (2009).

premiums were rising to level that was driving physicians from state). Thus, it is clear that the limitations put on medical malpractice actions by § 52-190a are reasonably related to the legitimate state interest of preventing frivolous or meritless medical malpractice claims.

C

Finally, the plaintiff claims that the court improperly dismissed the action on the basis of a perceived circumstantial defect in the plaintiff's pleadings in violation of § 52-123.[8] The plaintiff cannot prevail on this unpreserved claim because it does not satisfy the second prong of *Golding*, in that such a claim does not implicate a fundamental constitutional right. *State* v. *Golding*, supra, 213 Conn. 240 ("[p]atently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label"). Moreover, the plaintiff has not provided this court with any analysis of the alleged constitutional claim that he has raised, and we will not manufacture such an analysis on his behalf. The plaintiff's only mention of a constitutional right in connection with this particular claim is a brief reference in a footnote.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."