******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia, civil theft and unjust enrichment in connection with a $150,000 payment she made on the defendant's line of credit account. The defendant was in the business of collecting rare cars and worked with R, a broker, to find classic cars, purchase them, and, at times, resell them. The plaintiff's former husband, T, was also a broker of classic cars. At one point, the defendant was having cash flow problems and owed $150,000 on his line of credit. R asked T to loan the defendant the money and promised that it would be repaid within seven days. T, who was interested in cultivating a business relationship with the defendant, asked the plaintiff for the funds and the plaintiff, with the understanding that the money would be repaid in seven days, wired the funds directly to the defendant's line of credit account on September 1, 2015. The defendant did not learn until one week after the money had been received that it was from the plaintiff. T contacted the defendant in early January, 2016, seeking repayment of the $150,000, and the defendant refused to repay the money. The defendant filed a motion to dismiss the plaintiff's action for lack of personal jurisdiction, which was denied by the trial court. After a trial to the court, the court rendered judgment in favor of the plaintiff and awarded damages, including treble damages for the civil theft claim pursuant to statute (§ 52-564), and prejudgment interest, from which the defendant appealed to this court. On appeal, the defendant claimed that the trial court erred in denying his motion to dismiss, in finding that he committed civil theft and awarding treble damages, in awarding prejudgment interest on the trebled punitive portion of the damages and in setting the start date for the prejudgment interest on the unjust enrichment award. *Held*:

1. This court declined to review the defendant's jurisdictional challenge on the merits as the defendant waived his right to challenge the trial court's personal jurisdiction because he failed to file a supporting memorandum of law with his motion to dismiss as required by a rule of practice (§ 10-30).

2. The trial court erred in finding that the defendant committed civil theft and in awarding treble damages pursuant to § 52-564; the plaintiff's tort claim could not arise from an implied in law contract because she had no right to possess specific identifiable money once the payment on the defendant's debt was made, which is required to establish a valid claim of civil theft for money owed.

3. In light of this court's determination that the trial court erred in finding that the defendant committed civil theft and awarding treble damages pursuant to § 52-564, the award of prejudgment interest on that portion of the judgment also failed.

4. The trial court improperly set the start date for the commencement of prejudgment interest on the unjust enrichment damages award; the court set the start date for the prejudgment interest as September 8, 2015, based on the plaintiff's intent to make a loan to the defendant to be paid within one week, however, there was no evidence that the defendant agreed to borrow money from the plaintiff or to repay it within one week and, therefore, the proper start date for the prejudgment interest was January 14, 2016, the date that T first made a demand for repayment on the defendant.

Argued November 20, 2019—officially released March 24, 2020

*Procedural History*

Action to recover damages for, inter alia, unjust enrichment and civil theft, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Povodator, J.*, denied the

defendant's motion to dismiss; thereafter, the matter was tried to the court, *Hon. David R. Tobin*, judge trial referee; subsequently the matter was withdrawn as to the plaintiff Thomas Hamann; judgment for the named plaintiff, from which the defendant appealed to this court. *Reversed in part*; *judgment directed.*

*Jeffrey R. Babbin*, with whom was *Richard Luedeman*, for the appellant (defendant).

*Karen L. Dowd*, with whom was *Kenneth J. Bartschi*, for the appellee (named plaintiff).

*Opinion*

FLYNN, J. The defendant, Bernard Carl, appeals from the judgment of the trial court rendered in favor of the plaintiff, Maria Hamann,[1] on one count of unjust enrichment in the amount of $150,000 and one count of civil theft pursuant to General Statutes § 52-564,[2] awarding the plaintiff treble damages totaling $450,000, inclusive of the $150,000, and prejudgment interest on both the unjust enrichment and civil theft damage awards. In this appeal, the defendant claims that the trial court erred in (1) denying his motion to dismiss the case for lack of personal jurisdiction, (2) finding that he committed civil theft and consequently awarding treble damages to the plaintiff, (3) awarding prejudgment interest on the punitive portion of the civil theft award, and (4) setting the start date for prejudgment interest on the unjust enrichment award. We conclude that the court properly determined that the defendant had waived any claim of lack of jurisdiction over his person. We agree, however, with the defendant's claims regarding the judgment of civil theft, its consequential treble damages, and prejudgment interest on those damages, as well as the commencement date for the prejudgment interest on the unjust enrichment damages; therefore, we affirm in part and reverse in part the judgment of the trial court.

The following facts, as found by the trial court or as undisputed in the record, and procedural history are relevant to our disposition of the appeal. The defendant, Carl, served as a law clerk for Judge David Bazelon, the chief judge of the United States Court of Appeals for the District of Columbia Circuit and later as a law clerk for United States Supreme Court Justice Thurgood Marshall. Following his clerkships, he practiced law and served in governmental and business positions, including as assistant secretary of the United States Department of Housing and Urban Development. Upon his retirement, the defendant maintained a car collection, sometimes selling cars to finance the purchase of more desirable cars of greater value. He agreed to do business with Richard Edwards, a broker, offering him classic cars for sale, despite the fact that he did not entirely trust Edwards.

In November, 2013, the defendant sent a document to Edwards proposing an arrangement that he believed would minimize his risk, wherein Edwards would find classic cars and, if he deemed them acceptable, the defendant would purchase them. Edwards then would have an exclusive marketing period of sixty days following the purchase to find a buyer for the car at a price acceptable to the defendant. If such a sale took place, the profits would be divided evenly between the defendant and Edwards. The agreement required that all sales of cars be made to buyers who were willing to pay a nonrefundable deposit of 20 percent of the purchase

price. If the buyer failed to make the balance of the payment in thirty days, the deposit would be forfeited and retained by the defendant. The agreement also placed limitations on Edwards' ability to act on the defendant's behalf, significant among them that "[n]o agreement not executed by [the defendant] shall be binding upon [him]."

Between 2013 and 2015, the defendant purchased a number of cars that Edwards had located. Several of them were resold when Edwards, acting as a broker, found buyers for them. In the summer of 2015, the defendant believed that he owned an inventory of eight classic cars, which were stored at a dealership known as Specialist Cars of Malton, England (dealership). His investment in the cars in Malton was financed by Ferrari Motor Services (Ferrari). The cars remained at the dealership until they were either resold or delivered to the defendant. After Edwards' exclusive right of sale had expired in May, 2015, the defendant decided to retrieve his cars from the dealership and take personal possession of them.[3]

It was around this time that the plaintiff's former husband, Thomas Hamann (Thomas), became involved. Thomas also acted as a broker in the purchase and sale of classic cars. In 2013, Edwards invited Thomas to meet the defendant, whom Edwards described as his partner. Thereafter, Edwards and Thomas kept in communication. By the end of the summer of 2015, the defendant was facing cash flow problems. On September 1, 2015, the defendant owed an interest payment due on his line of credit with Ferrari. On or before that day, Edwards, who was still brokering deals for the defendant, asked Thomas for a loan of $150,000 on behalf of the defendant, which, he represented, would be repaid by the defendant within one week. Thomas, who was interested in cultivating a business relationship with the defendant, asked the plaintiff for the requisite funds as a loan to the defendant, which Edwards had directed should be paid directly to the defendant's account at Ferrari. Accordingly, at Thomas' request, the plaintiff, with the understanding that the money would be repaid in seven days, wired the funds to Ferrari, crediting the defendant's account.

On September 4, 2015, the defendant received confirmation from Ferrari that a payment of $150,000 had been made to his account. One week later, the defendant learned for the first time that the money was from the plaintiff. Not until early 2016 did Thomas initiate contact with the defendant in an effort to obtain repayment. When the defendant refused to repay the $150,000, the plaintiff commenced the present action, originally sounding in four counts, namely, unjust enrichment, breach of contract, civil theft, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b et seq.

On March 24, 2016, the defendant filed a motion to dismiss for lack of personal jurisdiction, which the court, *Povodator, J.*, denied on September 29, 2016. The defendant thereafter filed an answer denying all essential allegations of the complaint and later filed an amended answer, asserting three special defenses, namely, unclean hands, statute of frauds, and equitable estoppel.[4]

The case was tried to the court, *Hon. David R. Tobin*, judge trial referee, from January 10 through 12, 2018. At the conclusion of evidence, the plaintiff withdrew the second and fourth counts of the complaint, leaving only the unjust enrichment and civil theft counts. On April 25, 2018, the court issued its memorandum of decision, finding in favor of the plaintiff on both the unjust enrichment and civil theft counts. It rejected all of the defendant's special defenses and awarded damages in the amount of $150,000 on the unjust enrichment count and trebled damages pursuant to § 52-564 on the civil theft count, rendering a total judgment of $450,000.[5] Additionally, the court awarded prejudgment interest at a rate of 6 percent per year on the award of $150,000, commencing September 8, 2015, and continuing until January 14, 2016, and prejudgment interest on the $450,000 at a rate of 6 percent per year from January 14, 2016 to the date of judgment. This appeal followed. Additional facts will be set forth as necessary.

I

We first address the defendant's claim that the trial court lacked personal jurisdiction over him, citing the fact that he was not a Connecticut resident and had no contacts with the state relevant to this dispute. For reasons that follow, we conclude that the defendant waived his right to challenge the court's personal jurisdiction and, thus, do not evaluate the claim on its merits.

"Because a challenge to the personal jurisdiction of the trial court is a question of law, our review is plenary." (Internal quotation marks omitted.) *General Electric Capital Corp.* v. *Metz Family Enterprises, LLC*, 141 Conn. App. 412, 419, 61 A.3d 1154 (2013). Additionally, the issues raised necessarily involve interpretation of various Practice Book sections, for which our review is also plenary. *Wells Fargo Bank, N.A.* v. *Treglia*, 156 Conn. App. 1, 9, 111 A.3d 524 (2015).

Additional procedural facts are relevant to this claim. The plaintiff commenced this action on February 1, 2016, by service by a Connecticut state marshal of the nonresident defendant, by service of the writ of summons and complaint on the Secretary of the State of Connecticut pursuant to General Statutes § 52-59b, and by mail service postage prepaid and certified, return receipt requested, on the defendant at 2340 Wyoming Avenue NW, Washington, D.C. 20008. The writ bore a

return day of February 23, 2016. It was filed with the Superior Court clerk's office on February 8, 2016. The defendant appeared by counsel on February 22, 2016, two weeks after the plaintiff filed the writ of summons and complaint with the clerk's office, but one day prior to the February 23 return day.

On March 24, 2016, the defendant, through counsel, filed a motion to dismiss the plaintiff's complaint and, on the same date, a motion for extension of time, in which he prayed for a "thirty day extension of time, up to and including April 23, 2016, to file a responsive pleading to the complaint bearing a return date of February 23, 2016." The defendant never obtained a ruling from the court on his motion for extension of time, and he did not file a memorandum in support of his motion to dismiss at the time he filed the motion. Rather, he filed his supporting memorandum on April 12, 2016. The plaintiff objected to the defendant's motion to dismiss on April 14, 2016, on the grounds that it was untimely because it was not filed within thirty days of the return day and because the memorandum of law in support of the defendant's motion to dismiss was untimely.

Judge Povodator denied the defendant's motion to dismiss, noting that the motion for extension of time to plead was never granted and, as filed, the defendant's motion to dismiss merely stated that there was a challenge to personal jurisdiction without any specific claims to put the opposing party on notice. The court observed: "The motion filed by the defendant merely states that there is a challenge to personal jurisdiction, which could range from an improper return date, improper service, through what ultimately was being claimed here, lack of minimum contacts with the State of Connecticut." The court indicated that there must be some "indication of the precise basis for the motion" and that a "placeholder" motion was not legally sufficient. The court also noted that the issue of the defendant's lack of contacts with the state was not raised in a timely manner, an obvious reference to the defendant's late memorandum, which was not filed with the motion to dismiss, as required by Practice Book § 10-30 (c).

The plaintiff, on appeal, contends that the court properly denied the defendant's motion to dismiss on two grounds: first, because the defendant failed to file it within thirty days of his appearance on February 22, 2016, and second, because the defendant filed the motion to dismiss without a supporting memorandum of law as required by Practice Book § 10-30 (c), with both grounds serving as independent bases for the defendant's waiver of his personal jurisdiction claim. The defendant argues that his motion was timely made and thus not waived, citing *Lohnes* v. *Hospital of Saint Raphael*, 132 Conn. App. 68, 74–75, 31 A.3d 810 (2011),

cert. denied, 303 Conn. 921, 34 A.3d 397 (2012), for the proposition that when a defendant chooses to appear before the return day, as this defendant did by one day, he has thirty days from the return day rather than thirty days from the date of his appearance within which to file a motion to dismiss. We agree with the plaintiff that the defendant effectively waived his jurisdictional challenge because he failed to file a supporting memorandum of law with his motion to dismiss and, therefore, do not reach the merits of the plaintiff's claim that the motion was untimely because the defendant failed to file it within thirty days of his appearance.

Practice Book § 10-32 provides in relevant part: "Any claim of lack of jurisdiction over the person or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss filed . . . within the time provided by Section 10-30." Practice Book § 10-30 (b) requires a motion to dismiss to be filed within thirty days of the filing of an appearance. In addition to the time limitation prescribed by subsection (b), the defendant's motion to dismiss also is governed by subsection (c) of § 10-30. The language of Practice Book § 10-30 (c) clearly states, as to a motion to dismiss: "This motion shall *always* be filed with a supporting memorandum of law . . . ." (Emphasis added.)

"[I]n attempting to discern the meaning of a particular section of our Practice Book, we look first to the language of the provision." *State* v. *Angell*, 237 Conn. 321, 327, 677 A.2d 912 (1996). We apply the rules of statutory interpretation when interpreting rules of practice. *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 594, 181 A.3d 550 (2018). "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . In seeking to determine [the] meaning [of a statute or a rule of practice, we] . . . first . . . consider the text of the statute [or rule] itself and its relationship to other statutes [or rules]. . . . If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence . . . shall not be considered. . . . We recognize that terms [used] are to be assigned their ordinary meaning, unless context dictates otherwise." (Citations omitted, internal quotation marks omitted.) Id. "[W]e follow the clear meaning of unambiguous rules, because [a]lthough we are directed to interpret liberally the rules of practice, that liberal construction applies only to situations in which a strict adherence to them [will] work surprise or injustice." (Internal quotation marks omitted.) Id., 595.

Pursuant to Practice Book § 10-30 (c), a motion to dismiss "shall always be filed with a memorandum of law . . . ." This expresses a clear mandate, putting all on notice, that such a motion shall *always* be filed with

an accompanying memorandum. The language of the provision is clear and unambiguous. Its plain meaning does not lead to either absurd or unworkable results. Instead, it serves to provide timely notice of the basis for the motion to the party against whom dismissal is sought. Although the court did not expressly find that the defendant's memorandum was untimely, it is clear from its "placeholder" language and its ruling that there must be some indication of the precise basis for the motion, that it concluded that a memorandum was necessary.

The defendant concedes that he was required to submit a memorandum of law with his motion to dismiss but he argues that he attempted to do so by filing a motion for extension of time.[6] We are not persuaded. The defendant, in his motion for extension of time, requested an additional thirty days, up to and including April 23, 2016, to file a responsive pleading, but he did not mention that the request included an extension of the time to file a memorandum of law in support of his motion to dismiss. In essence, the defendant contends that even though the memorandum originally was not filed with the motion on March 24, 2016, if the court had granted his motion for extension of time until April 23, 2016, then the memorandum that he filed on April 12, 2016, would have been considered filed with the motion to dismiss because it would have been within the responsive pleading period.

The defendant then proceeds to challenge the trial court's denial of the motion for extension of time. "A trial court's decision not to consider a motion properly before it is the functional equivalent of a denial . . . ." (Internal quotation marks omitted.) *Gong* v. *Huang*, 129 Conn. App. 141, 148, 21 A.3d 474, cert. denied, 302 Conn. 907, 23 A.3d 1247 (2011). The defendant claims that the court erroneously ruled that the motion for extension was also untimely. He argues that, "[a]lthough a trial court is ordinarily not *required* to grant a timely motion for extension of time to plead, the trial court articulated no reason for denying the motion other than the court's mistaken determination that it was untimely." This is a mischaracterization of the record. Although Judge Povodator stated in his order denying the defendant's motion to dismiss that the motion for extension of time was untimely, he notes in the same sentence that it "in any event was never granted." This indicates that untimeliness was not necessarily the basis upon which the court failed to rule on the motion. Therefore, we cannot review whether the court's denial of the motion for extension of time was proper because the record does not reveal the court's reasoning, and the defendant failed to seek articulation of such reasoning. See *Blum* v. *Blum*, 109 Conn. App. 316, 331, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). "It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a

record adequate to afford review. . . . Accordingly, [w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) Id. Without the extension of time, the defendant's filing of the supporting memorandum of law occurred outside of the responsive pleading period.

We conclude that the record is clear that the supporting memorandum of law was not filed with the defendant's motion to dismiss on March 24, 2016. In fact, it was not filed until nineteen days later on April 12, 2016, more than thirty days after the defendant filed his appearance on February 22, 2016, and also more than thirty days from the return day of February 23, 2016. Because the memorandum was not filed within the time period prescribed by Practice Book § 10-30 (b), whether calculated from the return day or date of appearance, and the trial court did not grant the defendant's motion for extension of time to file his responsive pleadings, the defendant's motion is deemed filed without a supporting memorandum of law. Therefore, pursuant to Practice Book § 10-32, the defendant waived any claim of lack of personal jurisdiction. See *Wethersfield* v. *PR Arrow, LLC*, 187 Conn. App. 604, 655, 203 A.3d 645 (defendant "clearly waived" lack of personal jurisdiction claim on independent grounds that (1) it failed to file timely motion to dismiss and (2) it failed to file supporting memorandum of law with its motion), cert. denied, 331 Conn. 907, 202 A.3d 1022 (2019); see also *Executive Rental & Leasing, Inc.* v. *Gershuny Agency, Inc.*, 36 Conn. Supp. 567, 569–70, 420 A.2d 1171 (1980) (trial court erred in granting movant's motion for summary judgment when movant failed to submit supporting memorandum of law). As such, we decline to review the defendant's jurisdictional challenge on its merits.

II

We next address the defendant's claim regarding whether treble damages for civil theft are allowable under the facts of this case. The defendant claims that Judge Tobin erred in finding that he committed civil theft and, consequently, in awarding treble damages. Specifically, he argues that the plaintiff had no grounds to pursue treble damages for civil theft because her claim rested solely on the defendant's implied in law obligation to pay her money. The plaintiff claimed treble damages on a legal theory that the defendant's withholding of the return of her $150,000 deposited to his Ferrari account constituted civil theft, which entitled her to treble damages pursuant to § 52-564. We agree with the defendant.

"The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law and our review, therefore, is plenary." *Commissioner of Social Services* v. *Smith*, 265 Conn.

723, 734, 830 A.2d 228 (2003). Section 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Civil theft is synonymous with larceny under General Statutes § 53a-119; see *Stuart* v. *Stuart*, 297 Conn. 26, 41, 996 A.2d 259 (2010). Section 53a-119 provides in relevant part that "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

Section 53a-119, in relevant part, recognizes the following as one form of larceny: "Acquiring property lost, mislaid or delivered by mistake. A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of larceny if, with purpose to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to it." General Statutes § 53a-119 (4). Therefore, civil theft requires the intent to deprive another of his property, an element which must be proved by the plaintiff. See *Fernwood Realty, LLC* v. *AeroCision, LLC*, 166 Conn. App. 345, 359, 141 A.3d 965, cert. denied, 323 Conn. 912, 149 A.3d 981 (2016). The plaintiff claims that once the defendant became aware that it was the plaintiff who had made the $150,000 payment on his Ferrari account balance, and demand was made for repayment, he wrongfully withheld that payment.

The court found that the defendant was unjustly enriched by the $150,000 payment made by the plaintiff to the defendant's Ferrari account.[7] Additionally, citing to § 53a-119 (4), the court concluded that, although the defendant had received the money by mistake, this did not relieve him from civil theft liability when, "on January 14, 2016, having been fully informed of the facts establishing that he had no legal or equitable right to retain the $150,000, [the defendant] refused to return [it] to [the plaintiff]."[8] The trial court did not find credible the defendant's explanations of why he believed he was entitled to retain the $150,000. It stated in its memorandum of decision: "The court cannot credit [the defendant's] claim that he was entitled to retain the $150,000 . . . as a nonrefundable deposit made by Edwards on a purported sale of the Lamborghini Miura for $650,000. There is no record of any agreement (written or otherwise) which characterized the $150,000 as a nonrefundable deposit . . . ." The court then concluded that, "rather than providing a justifiable reason for his retention of the $150,000, [the defendant's] claims amount to nonviable excuse for his indefensible actions." Consequently, the court found that the defendant's actions constituted civil theft, entitling the plaintiff to treble damages under § 52-564.

On appeal, the plaintiff argues that the court properly determined that the defendant's withholding of the $150,000 constituted civil theft and correctly applied § 52-564 in awarding her treble damages. She argues that civil theft occurs when the plaintiff had possession of or legal title to the money at issue, and the money later is acquired by and subsequently improperly retained by another. She asserts in her brief that "all the plaintiff had to prove, and the trial court had to find, was that the defendant intentionally and without authorization deprived the plaintiff of her funds. There is sufficient evidence to support a finding that as of January 14, 2016, the defendant was aware that he had no basis to retain the funds, yet he refused to repay them." We disagree with the plaintiff and hold that the trial court erred in applying § 52-564 to the facts of this case.

In *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 804 A.2d 180 (2002), our Supreme Court set forth the general rule that, although money may be the subject of civil theft, "[a]n action for conversion of funds may not be maintained to satisfy a mere *obligation* to pay money." (Emphasis added; internal quotation marks omitted.) Id., 650. "[I]n order to establish a valid claim of . . . [civil] theft for money owed, a party must show ownership or the right to possess specific, identifiable money, rather than the right to the payment of money generally." *Mystic Color Lab, Inc.* v. *Auctions Worldwide, LLC*, 284 Conn. 408, 421, 934 A.2d 227 (2007). "Thus, [t]he requirement that the money be identified as a specific chattel does not permit as a subject of conversion [or civil theft] an indebtedness which may be discharged by the payment of money generally. . . . A mere obligation to pay money may not be enforced by a conversion [or civil theft] action . . . and *an action in tort is inappropriate where the basis of the suit is a contract, either express or implied.*" (Emphasis added; internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 772, 905 A.2d 623 (2006).

Applying both the *Macomber* and *Deming* rules to the case at hand, we conclude that the plaintiff's claim of civil theft fails as a matter of law. Here, the plaintiff's civil theft claim is an action in tort, as it is a civil wrong. Black's Law Dictionary (11th Ed. 2019) p. 1792, defines a "tort" as "[a] civil wrong, other than breach of contract, for which a remedy may be obtained . . . ." "We may . . . define a tort as a civil wrong for which the remedy is a common-law action for unliquidated damages, and which is not exclusively the breach of a contract or the breach of a trust or other merely equitable obligation." Id. According to *Deming*, the basis of such claim, then, cannot be an implied in law contract. "[A]n implied in law contract is another name for a claim for unjust enrichment"; *Vertex, Inc.* v. *Waterbury*, 278

Conn. 557, 574, 898 A.2d 178 (2006); which is what we have in this case.

Apart from the general legal impediment to recovery of civil theft damages arising out of contract or implied contract, like unjust enrichment, the plaintiff's claim suffers from the same impediment our Supreme Court identified in *Mystic Color Lab, Inc.* v. *Auctions Worldwide, LLC*, supra, 284 Conn. 421–29, namely, that she had no right to possess specific identifiable money. In the present case, as in *Mystic*, the plaintiff did not and could not show a right to possess specific identifiable money to support a claim in tort once she had used her $150,000 to pay the defendant's debt to Ferrari. See id., 427–28 (no evidence in record of intent to form trust, requirement of segregation of funds, or other means of establishing identifiable funds). The plaintiff made a partial payment on a debt owed by the defendant to Ferrari by wiring money, which was directly credited to the defendant's Ferrari account. Although the plaintiff testified that she intended her payment to be a loan that the defendant eventually would repay, there was no evidence that the defendant ever agreed to borrow money from the plaintiff. The trial court found that the defendant did not know that it was the plaintiff who had made the payment on his Ferrari account until one week later. Upon the defendant's refusal to repay the $150,000 after being made aware that the plaintiff had made the payment, the trial court found that the defendant was unjustly enriched, a finding that we leave undisturbed.[9]

We conclude as a matter of law that the court erred in finding that the defendant committed civil theft because the plaintiff's tort claim cannot arise from an implied contract of unjust enrichment and because the plaintiff had no right to specific identifiable money once it was paid to Ferrari. Having concluded so, we find no need to address the defendant's claim that the plaintiff failed to establish the element of malicious intent. On the facts of this case, a claim in tort is improper and, as such, the trial court erred in applying § 52-564. We conclude that the judgment finding the defendant liable for civil theft and treble damages in the amount of $450,000 must be reversed.

### III

We next turn to the defendant's claim that prejudgment interest may not be awarded on the trebled punitive portion of the damages award. "The decision to grant interest pursuant to [General Statutes] § 37-3a is reviewed under an abuse of discretion standard." *Whitney* v. *J.M. Scott Associates, Inc.*, 164 Conn. App. 420, 438, 137 A.3d 866 (2016). "To award § 37-3a interest, two components must be present. First, the claim to which the prejudgment interest attaches must be a claim for a liquidated sum of money wrongfully withheld and, second, the trier of fact must find, in its discre-

tion, that equitable considerations warrant the payment of interest." (Internal quotation marks omitted.) Id.

The trial court awarded prejudgment interest on the $450,000 award at a rate of 6 percent per year commencing January 14, 2016. Because we have concluded that the award of trebled punitive damages was improper and should be reversed, the award of interest on that portion of the judgment falls with it.

IV

Finally, we turn to the defendant's claim that the court incorrectly set the commencement date for prejudgment interest on the unjust enrichment award. The court set the start date for prejudgment interest on the $150,000 award as September 8, 2015. The defendant argues that the proper start date of interest should have been January 14, 2016—the date that Thomas first made demand on the defendant to repay the $150,000 to the plaintiff. We agree with the defendant.

Section 37-3a provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." We review an award of prejudgment interest under the abuse of discretion standard. "The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court." (Internal quotation marks omitted.) *Tang* v. *Bou-Fakhreddine*, 75 Conn. App. 334, 346, 815 A.2d 1276 (2003). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Aurora Loan Services, LLC* v. *Hirsch*, 170 Conn. App. 439, 458, 154 A.3d 1009 (2017).

The defendant does not challenge the trial court's authority to award the prejudgment interest but takes issue with the court's setting of the date from which to start calculating that interest. He argues that the proper commencement date should have been January 14, 2016, because it was not until then that the defendant's failure to repay the plaintiff could have become wrongful. He contends that "there was no 'wrongful detention of money' to start the interest clock . . . until Thomas asked [the defendant] to repay [the plaintiff] the $150,000."

We agree with the defendant that the date selected by the trial court for the beginning of the interest period was improper. The court awarded prejudgment interest on the $150,000 unjust enrichment award commencing September 8, 2015, based on the plaintiff's intent to make an interest-free loan to the defendant, which was to be repaid within one week. Although the plaintiff had characterized her payment of $150,000 to the defen-

dant's Ferrari account as a loan to the defendant, the record is devoid of evidence that the defendant ever agreed to borrow money from the plaintiff, much less to repay it within one week. This was made clear in the trial court's own findings of fact. The court noted that the funds were wired by the plaintiff "in the mistaken belief that she was making a short term interest-free loan to [the defendant]"—thereby suggesting that the defendant did not intend for such to occur—and that "neither the plaintiff nor Thomas notified [the defendant] of their expectation that he would repay the funds." It further found that no demand for repayment of the $150,000 was made until January 14, 2016, but, for a variety of reasons that the trial court found not credible, the defendant refused to pay.

We conclude that, although the court was well within its discretion to award prejudgment interest, the interest should not have commenced until demand for payment was made on the plaintiff's behalf on January 14, 2016. See General Statutes § 37-3a ("interest at the rate of ten per cent a year . . . may be recovered . . . as damages for the detention of money *after it becomes payable*" [emphasis added]). We reverse the portion of the prejudgment interest award from September 8, 2015 through January 14, 2016, and affirm its award commencing from January 14, 2016.

The judgment is reversed as to the civil theft count and the interest awarded thereon, and the award of prejudgment interest from September 8, 2015 through January 14, 2016, on the unjust enrichment count, and the case is remanded with direction to render judgment in favor of the defendant on the civil theft count, and to recalculate, beginning January 14, 2016, the prejudgment interest on the $150,000 damage award for unjust enrichment; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Although the original action was brought by Maria Hamann and Thomas Hamann, Thomas Hamann later withdrew as a plaintiff. Accordingly, we refer to Maria Hamann as the plaintiff.

[2] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[3] The defendant testified at trial that, after repeated attempts to obtain possession of his cars failed, he obtained an order from a British directing the dealership and Edwards to deliver the defendant's cars to him. He further testified that Edwards "appeared in the British court on the day the cars were to be turned over to him and testified that the cars had been taken from [the dealership] the previous day when a number of 'burly men' arrived at the dealership and took the cars. [The defendant] further testified that he later learned that four of the eight cars were not even [at the dealership] on the day of the alleged theft."

[4] The allegations in the special defenses capsulize the defendant's proffered reasons for not returning the plaintiff's $150,000. The allegations, in part, recite that "when the dealership . . . refused [the defendant's] request return the cars to his possession, Edwards reported to [the defendant] that he had a potential buyer for one of his cars, an orange Lamborghini Miura. After [the defendant] refused Edwards' request to delay reclaiming his cars, Edwards is alleged to have offered [the defendant] a $150,000 nonrefundable deposit in return for a two week opportunity to sell the Miura. [The defen-

dant] alleges that he instructed Edwards to wire the $150,000 deposit to his account at [Ferrari] to cover an interest payment on his line of credit. [The defendant] further alleges that when Edwards did not produce a buyer for the Miura he advised Edwards that he was keeping his deposit and renewing his demand for the return of all of his cars."

[5] The trial court provided in its memorandum of decision: "Damages on the unjust enrichment count are included in the $450,000 awarded on the civil theft count. See *Rogan* v. *Rungee*, 165 Conn. App. 209, 222–25, [140 A.3d 979] (2016)." Nonetheless, the court appears to have awarded prejudgment interest on both the $150,000 and the $450,000 multiple of that sum.

[6] He states in his brief: "[The defendant] understood this requirement, and so on the same day as the motion . . . also filed a motion for extension of time to plead in response to the complaint, so he could timely perfect the dismissal motion."

[7] On appeal, the defendant does not challenge the award of $150,000 to the plaintiff, an amount by which the court found that the defendant was unjustly enriched. The defendant states in his brief that he "does not seek in this appeal to overturn the finding that he cannot equitably retain the money."

[8] "On January 14, 2016, [Thomas] left a detailed voicemail on [the defendant's] mobile phone and followed up with an e-mail to [the defendant] that evening. The e-mail referred to a telephone conversation which Thomas had with [the defendant] a few weeks ago in which [the defendant] allegedly acknowledged that he was indebted to the Hamanns for the $150,000 which had been deposited in [his] account with [Ferrari]. Thomas also conveyed to [the defendant] his shock upon finding that [the defendant], in an e-mail to Edwards, had informed him that he intended to keep the $150,000 as a penalty. Thomas requested that [the defendant] repay the $150,000 to avoid litigation. . . . In [his response to Thomas' e-mail], [the defendant] insisted that the funds deposited to his account with [Ferrari] were a loan [from the plaintiff] to Edwards for which he had no responsibility. He denied having acknowledged his debt to the Hamanns, claiming that what he said was 'if [Edwards] had met his obligations to me, I would have agreed to have the $150,000 of the promised $650,000 proceeds of the sale of [a car] go to you. Sadly, [Edwards] decided to steal that car rather than sell it.' "

[9] The plaintiff was left a creditor of the defendant by this unjust enrichment. "A debtor-creditor relationship arises from a debt owed by one party to another. The debt owed arises from an obligation, often contractual, on the part of the debtor, not from a preexisting property interest of the creditor." *Mystic Color Lab, Inc.* v. *Auctions Worldwide, LLC*, supra, 284 Conn. 419.

---